**FT. SMITH AIRCRAFT CO. v. STATE INDUSTRIAL COMMISSION et al.**

No. 21659. Opinion Filed July 7, 1931.

Rehearing Denied July 28, 1931.

Pryor, Miles & Pryor, Vincent M. Miles, and Walter D. Humphrey, for petitioner.

J. Berry King, Atty. Gen., and Hudson & Hudson, for respondents.

McNEILL, J. This is an original action brought to review an order and award of the State Industrial Commission, awarding compensation to the respondent, Kenneth P. Enlows.

On January 6, 1930, said respondent filed with the State Industrial Commission his claim for compensation against the Ft. Smith Aircraft Company, petitioner herein. The petitioner had a lease upon a certain tract of ground in Sequoyah county, Okla., near the city of Fort Smith, Ark., upon which it maintained a commercial airport, at which persons were instructed in repairing, operating, and flying airplanes, and where a shop was maintained for repairing airplanes. The respondent was employed by the petitioner as a pilot for the purpose of transporting passengers and instructing students in operating and flying airplanes, and on October 26, 1929, while the respondent was giving instructions in flying to a student flyer with a Waco biplane, powered with an Ox-5 motor, his plane crashed to the ground a short distance from the airport, and respondent sustained an accidental personal injury resulting in brain concussion, broken ankle, and leg and a dislocated shoulder, and from the effects of which respondent was unconscious for about two months, and is still disabled. The only controversy as to facts arises from the contention of the respondent that, in addition to being employed as a pilot, he also was employed to do mechanical labor at the airport, which contention is denied by petitioner. Petitioner further contends that at the time of the crash, the respondent was directly violating the written rules of the airport, copies of which had been furnished to him, and was also violating the rules and regulations of the Department of Commerce of the United States, in that he was flying a plane at an altitude of less than 500 feet; and instead of giving his student instruction within gliding distance of the airport, he had taken him on a ride for pleasure for the purpose of inspecting duck blinds upon the Arkansas river; and that, in coming down to see the duck blinds closely, he had come to an elevation of not to exceed 200 feet, and in suddenly attempting to climb over some trees on the bank of the river, he lost his flying speed, and the plane fell.

The State Industrial Commission made certain findings of facts and awarded claimant compensation, to continue until the further order of the Commission, or until the percentage of permanent disability, if any, can be more definitely determined. The findings of fact to which the petitioner objects are as follows:

"1. That on and prior to October 26, 1929, claimant, Kenneth P. Enlows, was in the em-

ployment of respondent, Ft. Smith Aircraft Company, and engaged in a hazardous occupation subject to and covered by the provisions of the Workmen's Compensation Law.

"2. That arising out of and in the course of such employment with respondent herein, claimant sustained an accidental personal injury on October 26, 1929."

It is the contention of the petitioner that the respondent had violated instructions; that he and the student flyer, who was with him at the time of the accident, went to examine some duck blinds upon the Arkansas river, and for which reason the accident did not arise out of and in the course of the employment. In support of this contention, counsel for petitioner cites the case of Dickey v. Pittsburgh & L. E. R. Co., 297 Pa. 172, 146 Atl. 543, wherein the court said:

"We said in Shoffler v. Lehigh Valley Coal Co., 290 Pa. 480, 139 Atl. 192: ' "Course of employment" does not include (a) injuries received while away from the actual place of employment where the deviation or departure is wholly foreign to his duties, and amounts to an abandonment of employment; (b) injuries received in the commission of an act which is in direct violation of the law; or (c) an act contrary to the positive orders of the employer.' "

We have no fault to find with the law as declared in this decision, but the question of whether the injuries were received by the respondent while he was away from his actual place of employment and in violation of the instructions of his employer, is' a question of fact to be determined by the Commission, from all the evidence, and we cannot say that the conclusion reached by the Commission in that respect is not reasonably supported by the evidence. Both the respondent and the student flyer testified, in substance, that the respondent had taken the student up for instructions; that they remembered the crash when the airplane fell, and that was all they remembered; that the rest was blank to them; that they could not remember of going over to look at "duck blinds." Dr. Heasley, the physician who treated the claimant, testified that it is usual under such conditions that the person injured does not remember the details of what happened, and that they usually only remember taking off from the surface. There is some evidence in the record to show that, on a previous occasion, the claimant and student flyer while flying a plane had gone to look at these duck blinds, and the spot of the crash was about one-half mile from the duck blinds. The evidence does not show at just what distance the place of the crash was from the airport, but it is apparent from

the evidence that such distance was not great. From a consideration of all the evidence, we believe that the contention of petitioner that the respondent had left the place of his employment to inspect duck blinds was mere conjecture.

This brings us to the most serious question raised by the petitioner in his brief, as follows:

"The State Industrial Commission erred in including within the hazardous employments covered by the statutes of Oklahoma, as coming within the provisions of the Workmen's Compensation Act, the duty of flying an airplane, and by its order deprived petitioner of its property without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States.

"Section 7283 of the Compiled Oklahoma Statutes 1921, and amendments thereto, expressly name the hazardous employments in which employees shall be paid compensation under the Workmen's Compensation Law. The employment of flying an airplane is not included in this employment, and the State Industrial Commission is without jurisdiction to award compensation to an airplane pilot who is injured by the falling of an airplane when in flight."

Section 7295, C. O. S. 1921, provides that, in the absence of evidence to the contrary, a claim for compensation shall be presumed to come within the provisions of the act. As the contention of the petitioner, that the crash of the airplane occurred while the respondent was taking a flight for pleasure away from the airfield, was not supported by any evidence, the said provisions of the statute are applicable, or, at least, it may be said that the finding of the Commission that the respondent sustained an accidental personal injury arising out of and in the course of his employment is amply supported by the evidence.

The whole matter in controversy narrows down to the one question: Was the claimant at time of his accident engaged in a hazardous employment, covered by the Workmen's Compensation Act?

Section 7283, C. O. S. 1921, as amended by Laws 1923, c. 61, sec. 1, defines the employments contemplated by the Workmen's Compensation Act, and is, in part, as follows:

"Compensation provided for in this act shall be payable for injuries sustained by employees engaged in the following hazardous employments, to wit: Factories, cotton gins, mills and work shops where machinery is used. * * *"

Section 7284, as amended by Laws 1923, c. 61, sec. 2:

" 'Factory' means any undertaking in which the business of working at commodities is carried on with power-driven machinery, either in manufacture, repair, cleaning or assorting, and shall include the premises, yard, and plant of the concern, but shall not include any such plants or machinery used on farms.

" 'Workshop' means any premises, yard, plant, room or place wherein power-driven machinery is employed, and manual or mechanical labor is exercised by way of trade for gain, or otherwise, or incidental to the process of making, altering, repairing, printing, or ornamenting, cleaning, finishing, or adapting for sale, or otherwise, any article, or part of article, machine, or thing over which premises, room or place, the employer of the person working therein has the right of access or control."

A certified copy of the articles of incorporation of the petitioner were introduced in evidence, and they set forth the objects of its incorporation as follows:

"To maintain, carry on, operate and engage in the business of owning, buying, selling, possessing, operating, repairing, building, and leasing aeroplanes, and all parts and accessories of every kind and character of aeroplanes, and all kinds and descriptions of machines propelled through the air by motor; to engage in the operation of aeroplane transportation by freight and passenger, and for all commercial purposes; to engage in the teaching and instructing persons in the repair, operation, and use of aeroplanes or other machines propelled or operated through the air; to engage in the business of instructing and teaching persons to fly and operate such aeroplanes, or other machines operated through the air; to operate such machines for hire over regular routes; to operate such machines without regular routes, and to do any and all things necessary or requisite in carrying on, or incidental to, the operation of the business of aeroplane transportation and instruction therein, now ordinarily done in the operation of such business, or which may hereafter be incidental to the operation of such business. * * *"

The corporation was thus formed for the purpose of building, manufacturing, and selling airplanes, to engage in the transportation business and the business of repairing airplanes, and of teaching persons to fly and operate airplanes.

It is contended by the petitioner that the respondent was not employed in a factory or workshop, and that the injuries sustained were not compensable under the Workmen's Compensation Act. The nature of the claimant's employment is shown by his own testimony as follows:

"I was flying instructor, and if necessary carry passengers from one place to another also help out in the shop if anything I could do to help the mechanic. * * * If any of the engines went wrong I was to help fix them; of course, the mechanic had to direct and approve all of the work that I did, I might have to crank the engine to test the valves, and do wing work. * * *"

"Q. In the course of this work, did it ever become necessary to work on these motors while working in the shop? A. Not in the shop. Q. Where would you? A. You would have to put them out of the shed and have to pull down the propeller to crank the engine. Q. Did you ever work on these airplane motors while the propeller was running? A. I looked at the spark plugs. Q. You did what work around that was needed while the propeller was running? A. Yes, sir. Q. That was part of your duties? A. Yes, sir, part of my duties was to check it. Q. And it was also part of your duties to instruct in flying? A. Yes, sir. * * * Q. For the purpose of repairing this machinery, did the company maintain a repair room? A. Yes, sir. Q. A shop for the repair of motors? A. Yes, sir. Q. Mr. Enlows, you stated you were employed by Mr. Bland as a transport pilot and mechanic? A. Yes, sir; he employed me to fly and instruct students, and if necessary to carry passengers; he told me I was to help as a mechanic in the shop. Q. Did you ever work inside the shop? A. Yes, sir. Q. What did you do? A. I helped him clean up some cylinders in the engine there he was rebuilding. Q. You mean to tell the commission that part of your duties were assisting the mechanic? A. Yes, sir. Q. How long had you been working there at that time? A. Approximately since the 16th of September, I am not positive. Q. You say the only time you worked in the shop was one day to help clean some cylinders? A. No, sir, many days—Q. I mean working. A. I have done several little jobs around there, I don't know exactly what the longest job was."

Was the business of the petitioner in which the claimant was employed at the time of the accident a factory, as contemplated by the Workmen's Compensation Act?

Webster defines a "factory" to be: "A building, or collection of buildings, usually with its equipment or plant appropriated to manufactory of goods." This is the generally accepted meaning of the word. The statute defines "factory" as follows:

" 'Factory' means any undertaking in which the business of working at commodities is carried on with power-driven machinery, either in manufacture, repair, cleaning or assorting, and shall include the prem-

ises, yard and plant of the concern, but shall not include any such plants or machinery used on farms." (Section 7284, C. O. S. 1921.)

—which is a broader meaning than conveyed by Webster's definition. Commodity has been defined as a broader term than merchandise, and may mean almost any description of article called movable or personal estate. Shuttleworth v. State, 35 Ala. 415; State v. Hinke, 19 Mo. 225. Giving the word "commodity" this broad meaning, it would include airplanes, and the shop or place in which they are worked on by power-driven machinery is a factory within the meaning of the Workmen's Compensation Act, whether that work consists of building, manufacturing, repairing or cleaning such airplane under such a definition, the airport in this case, in which a shop was maintained for the purpose of repairing and cleaning airplanes, was a factory.

Was the airport or flying field a "workshop where machinery is used," as defined by the statute? Webster defines a "workshop" as "a shop where any manufacture or handiwork is carried on."

Section 7284, C. O. S. 1921, as amended by Session Laws 1923, ch. 61, sec. 2, defines a "workshop" as follows:

" 'Workshop' means any premises, yard, plant, room or place wherein power-driven machinery is employed and manual or mechanical labor is exercised by way of trade for gain or otherwise." etc.

Unquestionably, the airport or flying field was a place where power-driven machinery was employed and manual or mechanical labor was exercised by way of trade for gain or otherwise. The respondent sustained his injuries while handling power-driven machinery and while engaged in manual and mechanical labor by way of trade or gain. In the case of Board of Education of High School District No. 502 v. Industrial Commission, 301 Ill. 611, 134 N. E. 70, the Supreme Court of Illinois held that a manual training department of a highschool is a workshop, and that a teacher who sustained injuries while giving instructions therein was entitled to compensation. In that case, the court said:

"The defendant in error contends that the statutory regulation does not apply to the manual training department of this school because it is neither a factory, a mercantile establishment, a mill, or a workshop. * * * It is urged that, in order to constitute a workshop, the labor must be exercised by way of trade, or for the purpose of gain, or as incidental to a process of making certain

products for gain. The plaintiff in error was working with the saw for gain. That was a part of his duty, for which he was paid. The article which he was making was not, perhaps, intended for sale. What he was doing was in the course of his duty for the instruction of the pupil. He was doing what he was employed to do for pay, whether it was gainful to his employer or not. The place in which that kind of work was done was a workshop."

In the instant case the respondent was working for pay and at work which was gainful to his employer. Had the respondent been injured while repairing an airplane in the shed, which is mentioned in the evidence as located on the flying field, could it be doubted that he suffered his injuries while employed in a workshop? If he had been injured in running an airplane out of the shed into the open part of the flying field, as was his duty to do, or if he had been injured while within the airport, could it be said he was not injured while employed in a workshop? A workshop is not necessarily within or connected with a building.

According to the evidence in this case, the claimant was not injured while working in the shed, or within the limits of the airport, but his injuries were sustained while flying an airplane and while in the act of instructing a student, and at a short distance from the airport or flying field. Owing to the nature of the business, flights made by the respondent in the process of giving instructions to the student necessarily could not be confined to the boundaries of the airport, or to the air district above the same. Considering the nature of the business, it cannot be said that the respondent, at the time of the accident, had taken the airplane, which was being operated in the performance of the master's business in the instruction of the student flyer, to an unreasonable distance from the airport.

The rule is well established that an injury is compensable under the Workmen's Compensation Act when it is sustained in performing an act which is fairly incidental to the prosecution of the master's business, even though such act may not be performed at the building or premises where the major part of the work of the employees is done. Motor Equipment Co. v. Stephens, 145 Okla. 156, 292 Pac. 63; Superior Smokeless Coal & Mining Co. v. Hise, 89 Okla. 70, 213 Pac. 303; Nash-Finch Co. v. Harned, 141 Okla. 187, 284 Pac. 633. In the case of Motor Equipment Co. v. Stephens, supra, the respondent, Stephens, was a traveling sales-

man for an employer who operated a store in Lawton and engaged in selling tools and machinery, and as such salesman was required to visit garages in a radius of about 35 miles of Lawton, and on one of his trips he was injured in an automobile collision upon the public highway a number of miles from the place of business in Lawton. This court held that because it had been shown that one of the duties of the employee was to repair and demonstrate machinery, requiring manual and mechanical labor, the injury sustained by him came within the terms of the Workmen's Compensation Act. Very much to the same effect was the case of Wahlig v. Krenning-Schlapp Gro. Co. (Mo.) 29 S. W. (2d) 128; and the case of Bise v. Tarlton (Mo. App.) 35 S. W. (2d) 993, where it was said:

"Our Supreme Court, in the recent cases of Wahlig v. Grocer Co., 29 S. W. (2nd) 128, loc. cit. 130, and Cassidy v. Eternit, 32 S. W. (2nd) 75, in construing section 3 of our Workmen's Compensation Act (Laws 1927, p. 492), held that 'an injury arises "out of" the employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury; and that an injury to an employee arises "in the course of" his employment when it occurs within the period of his employment, at a place where he may reasonably be, and while he is reasonably fulfilling the duties of his employment or engaged in doing something incidental thereto,' and section 7 (c), Laws 1927, p. 496, 'by declaring in section 7 (c) that injuries to employees arising out of and in the course of their employment, as provided for in section 3, shall cover injuries to employees "while engaged in, or about the premises where their duties are being performed, or where their services require their presence as a part of such services," the Legislature, in our opinion, intended to extend the protection of the law to all employees while in or about any premises where they may be engaged in the performance of their duties, and while at any place where their services, or any act, task, or mission which forms a necessary part of their services, may reasonably require them to be'."

In the case of Nash-Finch Co. v. Harned, supra, the respondent was employed as a city salesman, collector, and packer, and used his car in connection with such duties. In its decision, this court says:

"The injury occurred at respondent's home; he went out to crank his car to go to work, his car backfired and caused the injury complained of. This car being used for purpose of delivering merchandise sold by respondent, and respondent not being used exclusively as clerical worker, brings this case clearly within the law providing for compensation."

In that case the respondent was not precluded from compensation because at the time he sustained his injuries he was not within the premises of the mercantile establishment where employed. In this case, should the respondent be precluded from compensation because at the time he sustained his injuries he was not within or upon the tract of ground used as an airport or flying field? At the time of the injury he was in the course of his employment, and the injury arose out of and in the course of said employment. The nature of the business conducted by the petitioner was such that it could not be carried on altogether within a building or within the boundaries of a particular tract of ground, but was carried on in and around its airport or flying field, and in the air where respondent was required at times to be in the furtherance of his employer's business. His duties required him to fly, and at other times he was engaged in repairing, cleaning airplanes, and instructing student flyers. This was carrying on a business at a place where power-driven machinery was employed and manual and mechanical labor was exercised "by way of trade for gain or otherwise," and comes within the provisions of the Workmen's Compensation Act. Possibly no one employee was engaged in each part of the business carried on by the petitioner, but certainly the respondent, who according to his own testimony and the great weight of the evidence was employed to assist the mechanic in cleaning and repairing airplanes and in instructing students in flying, was engaged in a hazardous employment subject to the Workmen's Compensation Act.

It is contended by the petitioner that, if the business of the operation of airplanes is included within the Workmen's Compensation Act, it would work its ruin because it cannot protect itself by insurance, but, construing the law as we do, we hold that whether such contention be true or not, it is a proper matter for the consideration of the Legislature, and not for the courts.

The question of whether the Workmen's Compensation Act provides for the payment of compensation to a transport pilot for injuries sustained while engaged in the transportation of freight or passengers, in either interstate or intrastate commerce, is not involved in this case.

The judgment of the State Industrial Commission is affirmed.

LESTER, C. J., CLARK, V. C. J., and

RILEY, HEFNER, SWINDALL, AN-
DREWS, and KORNEGAY, JJ., concur.
CULLISON, J., absent.

Note.—See under (2, 3,) anno. 62 A. L. R.
231; 69 A. L. R. 336; R. C. L. Continuing
Perm. Supp. p. 1139; (28 R. C. L., title
Workmen's Compensation.)