[No. 27627. Department Two. August 21, 1939.]

THE STATE OF WASHINGTON, *on the Relation of Northwest Airlines, Inc., Plaintiff*, v. J. W. HOOVER, *as Acting Director of the Department of Labor and Industries, Respondent*.[1]

[1]Reported in 93 P. (2d) 346.

278

*Karr & Gregory,* for relator.

*The Attorney General* and *Browder Brown, Assistant,* for respondent.

BEALS, J.—Relator filed in this court an original proceeding in mandamus, asking that a writ issue requiring the acting director of the department of labor and industries to recognize certain employees of relator as within the scope of the workmen's compensation act of this state, and to establish a rate schedule fixing a basis of contribution for relator.

Northwest Airlines, Inc., relator herein, is a corporation, engaged in the business of transportation by air, having its principal place of business in St. Paul, Minnesota. It carries passengers, express, baggage and the United States mails in interstate commerce, and is also engaged in intrastate transportation within the state of Washington. Exclusive of its clerical and office staffs, relator employs between seventy-five and one hundred persons within the state of Washington, most of whom are members of ground crews; and in addition to the employees mentioned, relator employs approximately twenty-five pilots and co-pilots and three stewardesses, all of whom are stationed either in Seattle or Spokane, and all of whom, to some extent at least, are engaged in interstate commerce.

Relator filed its application for an alternative writ, and in support thereof filed the affidavit of one of its counsel, setting forth in some detail the facts hereinabove generally stated, and also that relator had by letter requested that the department of labor and industries of Washington take steps to bring relator's em-

ployees under the act, and that the department had refused to do so. Copies of the letters which passed between the relator and the department are attached to relator's application for the writ, and from this correspondence it appears that the department refused to recognize, as within the scope of the statute, airplane pilots and instructors, while as to certain of relator's maintenance personnel, the department stated that it would make an investigation for the purpose of ascertaining whether or not these employees should be recognized as within the protection of the act.

An alternative writ of mandate having been issued, the department appeared by the attorney general and demurred to relator's petition and to the alternative writ, upon the ground that the same failed to state facts sufficient to constitute any cause of action, or any sufficient grounds for the granting of the relief demanded. The matter, having come on regularly before the court, was argued and submitted upon relator's application and the demurrer thereto.

Relator's argument has been directed almost entirely to the question of whether or not its employees who are actually engaged in flying should be included within the act, and as it appears from relator's petition that the department proposed to make some investigation concerning the status of other of relator's employees, with the view of determining whether or not such employees come under the act, we shall consider relator's application for a writ of mandate as limited to such of its employees as are actually engaged in navigation of the air. Any questions which may arise in the future as to the status of other employees of relator will be left open for future determination.

By Laws of 1911, chapter 74, p. 345 (Rem. Rev. Stat., § 7673 [P. C. § 3468] *et seq.*), an act relating to compensation of injured workmen, the legislature declared

the common law system governing the remedy of workmen against employers for injuries received in hazardous work to be inconsistent with modern industrial conditions, and established a new plan for the compensation of persons injured in hazardous industry. As, in 1911, transportation by air was a novelty, and as a practical proposition had not reached the commercial stage, the act did not refer to travel by air. That occupation was not referred to in the act, and persons so engaged were not included within its operation. The act was amended several times without reference being made to persons engaged in transportation by air, but Laws of 1923, chapter 136, p. 373 (Rem. Comp. Stat., § 7676), amended it in certain particulars, and under the title "Industries," a new class, number 34-5, was added, bringing airplane pilots and instructors under the act, their industrial insurance rate, per cent of payroll, being fixed at ten per cent, and the medical aid rate at three cents per day.

While between 1923 and 1937 the act was several times amended, and changes made in the classifications of industries as shown in the rate schedule, the rate of contribution as to class 34-5 being changed, between 1927 and 1937 no change was made in § 7674, in which were listed the extrahazardous employments, which section contained no specific reference to persons engaged in air navigation. By laws of 1937, chapter 211, p. 1028 (Rem. Rev. Stat. (Sup.), § 7674 [P. C. § 3469]), Rem. Rev. Stat., § 7674, was amended, and among the extrahazardous occupations named were included "teaming, truck driving and motor delivery, including drivers and helpers, in connection with any occupation except agriculture."

By Laws of 1937, chapter 89, p. 345 (Rem. Rev. Stat. (Sup.), § 7676 [P. C. § 3471]), relating to industrial insurance and medical aid rates, the classifications were

again amended, class 34-5, *supra,* was omitted, and for the first time there was included class 34-3, "Airplane (manufacturing)."

By Laws of 1939, chapter 41, p. 119, § 1, Rem. Rev. Stat., § 7674, was again amended, the words hereinabove quoted from Laws of 1937, chapter 211, being again included in the act as amended.

█ The business of manufacturing airplanes has been, by the legislative enactment above referred to, included within the scope of the act. Relator vigorously argues that its airplanes are used in motor delivery, and that its employees engaged in driving the planes and in assisting in their operation while in the air are brought within the act by the portion of chapter 211, Laws of 1937, above quoted.

It is argued that, by dropping the classification "airplane pilots and instructors" from the rate schedule, and adding motor delivery to the extrahazardous employments, the 1937 legislature intended to bring under the act all workmen engaged in the operation of an air transportation system, instead of including airplane pilots and instructors only. The 1937 legislature, as above stated, added a classification bringing the industry of manufacturing airplanes within the act.

Consideration of the statute now in force, in the light of the changes which have been made in the law in respect to the question under consideration, convinces us that it was the intent of the legislature to bring the business of airplane manufacturing under the act, but not to include within the scope thereof airplane pilots or instructors or other employees of air transportation companies engaged in actual flying. We cannot agree with relator in its contention that motor delivery, as used in the statute above quoted, includes airplanes. In construing a statute, all pertinent portions thereof should be considered, as well as the history of the

legislation. We cannot give the act the broad and inclusive construction for which relator contends.

Relator relies upon the opinion of the supreme court of Oklahoma, in the case of *Ft. Smith Aircraft Co. v. State Industrial Ins. Commission,* 151 Okla. 67, 1 P. (2d) 682. It appeared that the duties of the injured workman included repairing and cleaning airplanes, and required him to fly occasionally and to instruct student flyers. The workman was injured while flying, in the course of a lesson to a student flyer. The court held that the workman was both a mechanic and an instructor in flying, and was engaged in extra-hazardous employment within the scope of the workmen's compensation act. We are concerned here with employees whose duties are exclusively confined to flight operations. The case cited is not in point.

The view which we take of the statute renders unnecessary any discussion of the fact that relator's employees are engaged in interstate commerce.

We hold that persons in relator's employ as pilots, co-pilots, and stewardesses, are not within the protection of the workmen's compensation act. As to other employees of relator, not actually engaged in flying, we express no opinion, it appearing that the department is conducting an investigation concerning the applicability of the statute to some of these employees. Questions concerning them are left open for future determination.

Writ denied.

BLAKE, C. J., MAIN, SIMPSON, and JEFFERS, JJ., concur.