Claim of Jerry MERRITT, Deceased, by Donna Merritt, his representative.

WYOMING STATE TREASURER ex rel. WORKMEN'S COMPENSATION DEPARTMENT, Appellant (Objector-Defendant below),

George's Ford Center, also known as Allen George Ford, Inc., Appellant (Employer below),

v.

Jerry MERRITT, Deceased, by Donna Merritt, his representative, Appellee (Employee below).

No. 3749.

Supreme Court of Wyoming.

June 25, 1969.

Joseph E. Darrah, Sp. Asst. Atty. Gen., Cheyenne, Louis L. Walrath, Thermopolis, for appellant.

Chester Ingle, Thermopolis, for appellee.

Before GRAY, C. J., and McINTYRE, PARKER and McEWAN, JJ.

GRAY, Chief Justice.

Donna Merritt, widow of Jerry Merritt, deceased, filed a claim for death benefits under the Workmen's Compensation Law, §§ 27-48 through 27-168, W.S.1957, C.1967,

asserting that decedent was fatally injured in an automobile accident and at the time of his death was employed as a "car salesman" by George's Ford Center of Thermopolis, Wyoming, and that such injury occurred while decedent was engaged in the carrying out of his duties in an extra-hazardous employment. The State Treasurer resisted the claim on the ground that decedent was not engaged in an extra-hazardous occupation within the purview of the law at the time of the accident and for such reason claimant was not entitled to benefits thereunder. After hearing, the trial court, inter alia, found "that such death was sustained while employee was working in a covered occupation namely motor delivery under the Workmen's Compensation Law" and on the basis of such finding the trial court entered an order awarding death benefits to the widow and minor children. The State Treasurer and the employer have appealed.

In their joint brief it is stated, "The only question raised on appeal is whether or not, under the facts as presented to the district court, the claimant below was employed within the meaning of the words 'motor delivery' as set out in the Wyoming Workmen's Compensation Act." Claimant does not directly concede that such is the only question before us and, even though such proposition may be answered adversely to claimant, seems to suggest that under the accepted doctrine of liberal construction of the law the order of the trial court may be sustained on other grounds. No cogent argument or authority is presented pointing out other grounds that might sustain the trial court and for such reason, and the further reason that the record is so meager and almost devoid of any pertinent facts relating to the employer's business, we are constrained to confine our consideration to the question posed by the State Treasurer and the employer. Another way of stating the proposition would be whether or not the claimant sustained the burden of establishing by a preponderance of the evidence that the decedent at the time of injury was employed and at work

in the extra-hazardous occupation of "motor delivery." Pease v. Pacific Power & Light Company, Wyo., 453 P.2d 887, 889.

At the hearing it was stipulated that the decedent at the time of the accident was driving an automobile of the employer; that the accident happened in Hot Springs County, Wyoming; and that decedent's body and the wrecked automobile were found by a highway patrolman at the side of the road. In addition, claimant called Allen George, who testified that he was engaged in the automobile business and doing business under the corporate name of Allen George Ford Center; that on the night before the accident he contacted decedent with respect to employment as a car salesman and such an arrangement was made; that decedent advised him "that he had to go to Meeteetse the next day anyway and he would like to take a car to show to some people which he knew"; that a 1968 Ford demonstrator belonging to the witness's wife was turned over to decedent that evening and was the car involved in the accident; that decedent left Thermopolis early the next morning in the automobile and it was about noon when the wreckage was discovered; and that decedent's duties would have included contacting prospects, driving cars, and trying to sell cars. On cross-examination the witness said that all he expected of new salesmen was to go out and "dig up" prospects and that "I can't turn them loose on a deal until they work for me for at least a year"; that decedent had no authority to sell and deliver the automobile in question; that decedent was employed as a salesman and at no time worked in the garage; and that the employer did not report or pay premiums for workmen's compensation on car salesmen. While other testimony was presented, it is not material to the only question before us and requires no further comment.

Turning to the section of the statute which enumerates the various extra-hazardous occupations covered by the act, § 27–56,

W.S.1957, C.1967, the provision of the section pertinent here provides as follows:

> "The extra-hazardous occupations to which this act is applicable are as follows: * * * motor delivery, including drivers and helpers in connection with any occupation except agriculture or ranching."

We have not heretofore had occasion to consider just what employment might or might not fall within the scope of that provision and it is apparent at the outset that the term "motor delivery" is so general that no ready formula for solving the problem can be supplied. In a large measure the reach of the provision will have to be developed on a case-to-case basis.

Keeping in mind, however, "that an employer's business may be covered as to some phases by workmen's compensation and not as to others," Rocky Mountain Tank & Steel Co. v. Rager, Wyo., 423 P.2d 645, 647, our initial consideration, of course, is to determine as best we can the business activity of an employer that the legislature intended to embrace within the term "motor delivery." The legislature has afforded little guidance in the matter. Of some assistance is the fact that prior to the time this particular provision came into the statute by way of amendment in the year 1941 (see Ch. 122, § 1, S.L. of Wyoming, 1941) the occupations of "transfer companies; teaming and truck driving * * *; warehousing and transfer" were enumerated as extra-hazardous occupations. Apparently at that time the legislature was persuaded that the categories enumerated, while affording protection to some workmen engaged in transporting property over the streets and highways by motor vehicle, did not reach other workmen subjected to the same risks but who because of differing circumstances could not reasonably be said to be employed in an occupation falling within the categories then existing. It would thus appear, to that extent at least, that the amendment was intended to remove such inequity; and we are not without some guidance in reaching that conclusion.

Some four years prior to the time the amendment was adopted here the State of Washington had by way of amendment enumerated as an extra-hazardous occupation that of "motor delivery, including drivers and helpers, in connection with any occupation except agriculture." Laws 1937, Chapter 211, p. 1028. It will be noted that except for a minor change in punctuation and the addition of the words "or ranching" in § 27–56, W.S.1957, C.1967, the two provisions are identical. In the year 1939 the supreme court of Washington, in State ex rel. Northwest Airlines v. Hoover, 200 Wash. 277, 93 P.2d 346, had occasion to consider whether such provision covered pilots, copilots, and stewardesses while engaged in transporting persons and property by air, and it was held that it did not. The decision is not particularly helpful, but in the case of Berry v. Department of Labor and Industries, 11 Wash.2d 154, 118 P.2d 785, 788, 140 A.L.R. 392, a rather informative discussion will be found as to what that court concluded the provision was intended to cover. It there said:

> "It seems reasonable to suppose that the legislature, in amending the act in 1937, had in mind the decision of this court in the case of Edwards v. Department of Labor & Industries, 146 Wash. 266, 262 P. 973, 975, in which we considered the prior legislative classification as extra-hazardous of 'transfer, drayage and hauling,' and decided that the occupation intended to be covered thereby was that of commercial hauling for hire, and not the hauling by an employer of his own goods, in his own truck. In the cited case, it was held that a merchant delivering his merchandise by his own truck was not engaged in the operation of transfer, drayage and hauling, and was not engaged in an enumerated extra-hazardous occupation. In the course of the opinion we said: 'Had the Legislature classified the driving of ordinary business delivery wagons or trucks, or transferring or hauling in the business of any merchandise concern, whether such business was extrahazardous or not, re-

spondent would have come under the act.' "

In the most recent case, Clossin v. Department of Labor and Industries, 64 Wash.2d 783, 394 P.2d 363, it was held that an employee engaged in driving a delivery van for a florist was covered by the provision. We do not say, of course, that the same considerations which prompted the Washington legislature to adopt the provision were before our legislature in the year 1941. Nevertheless, because of the great similarity of the Wyoming statute to the Washington statute in regard to the question under consideration, we are impressed with the reasoning of the Washington court that the term "motor delivery" brought within the coverage of the law as an extra-hazardous occupation the driving of an employer's motor vehicle ordinarily used and being used in a merchandising business for the delivery or hauling of the employer's goods and merchandise. It is within that concept that we must test the merit of the claim here presented.

In so doing we are immediately confronted with the paucity of claimant's evidence to sustain the essential elements of the claim. It was necessary, in the first instance, for claimant to adduce sufficient substantial evidence from which the trial court could find that the employer as a part of his business was engaged in the extra-hazardous occupation of "motor delivery." All that the evidence set forth above tends to establish in this respect is that the employer was engaged in the automobile business, including the sale of automobiles. Without more, there is no evidence from which an inference could be drawn that the employer's business involves an occupation reasonably falling within the category of "motor delivery." In addition, the evidence conclusively establishes that on the trip in question decedent, as a car salesman, was driving the "demonstrator" for the sole purpose of showing it to prospective customers. He was without authority to sell and deliver it to a buyer. For such reasons we have no alternative but to hold that there was

no substantial evidence upon which the trial court could find that at the time of injury decedent was "working in a covered occupation namely motor delivery under the Workmen's Compensation Law."

Consequently, the order of award of the trial court must be and the same is hereby reversed.

Reversed.