[Civ. No. 6290.   Third Appellate District.—November 24, 1939.]

EDWARD WILLIAM JORDT, Respondent, v. CALIFORNIA STATE BOARD OF EDUCATION et al., Appellants.

Earl Warren, Attorney-General, and Ralph H. Cowing, Deputy Attorney-General, for Appellants.

John L. Brannely for Respondent.

TUTTLE, J.—Respondent, an osteopathic physician and surgeon duly licensed by the Board of Osteopathic Examiners on August 27, 1930, filed his petition for a writ of mandate against appellant Board, directing said Board to issue to him a "health and development credential", under the provisions of the School Code of California, Part II. The trial court entered judgment granting the writ, and the Board now appeals from that judgment.

From the record it appears that prior to the year 1922, the State Board of Medical Examiners was the sole licensing agency for practitioners from all schools of medicine and healing, including those of the osteopathic branch. In 1919, the legislature (Stats. 1919, p. 483), amended section 1775 of the Political Code, relating to the granting of certificates by county boards of education, to read in part as follows: (Sub. [f]) : "Health and Development Certificates: To holders of certificates to practice medicine and surgery issued by the California State Board of Medical Examiners . . . ". It is conceded by all parties that no such certificate can issue until credentials are granted by appellant, State Board of Education. This provision of the Political Code is now sub-

stantially embodied in the School Code, and designated as section 5.190. Upon the passage of this amendment, *appellant proceeded to issue such credential to all osteopathic physicians and surgeons who held certificates to practice from the State Board of Medical Examiners, and who were otherwise qualified.* The secretary of the State Board testified that if any osteopathic physician *to-day* presented such certificate, it would be accepted. This course continued until December 21, 1922, the effective date of an initiative act which set up a State Board of Osteopathic Examiners, granting to that Board exclusively all the powers to license osteopathic physicians and surgeons. After the date last mentioned, appellant School Board has consistently refused to grant the credential in question to any osteopathic physician or surgeon who held or holds a license from State Board of Osteopathic Examiners, upon the ground that they did not come within the provision of the School Code quoted above, they having no ''certificates to practice medicine and surgery issued by the California State Board of Medical Examiners''.

It is not contended by appellant that there has been any change in the requirements and qualifications of an osteopathic physician which would form the basis of the distinction made after the passage of the said initiative act. It is admitted by appellant Board that if petitioner possessed a license from the State Board of Medical Examiners they would issue the said credentials to him.

It thus appears that prior to 1923, osteopathic physicians and surgeons were eligible and qualified to receive the credential, the issuance of which is here sought by petitioner. After the adoption of the initiative measure setting up a Board of Osteopathic Examiners, California State Board of Education, appellant herein, refused to issue such a certificate to those osteopathic physicians and surgeons who did not have a certificate to practice from the State Board of Medical Examiners. In so acting, they followed the law literally. It thus appears that if no further legislation had been adopted affecting the law as it stood in 1922, and prior thereto, appellant Board would still be issuing such certificates to osteopathic physicians and surgeons who were otherwise qualified. Should the sole fact that the law was changed so that another Board (Osteopathic), issued an identical certificate

to practice, deprive petitioner of the right to the certificate sought here? We believe that the answer must be found by ascertaining the legislative intent. Section 1859 of the Code of Civil Procedure provides as follows:

"In the construction of a statute the intention of the legislature, and in the construction of the instrument the intention of the parties, is to be pursued, if possible; and when a general and (a) particular provision are inconsistent, the latter is paramount to the former. So a particular intent will control a general one that is inconsistent with it."

In 23 California Jurisprudence, at page 725, the rule of construction of a statute is thus stated:

"It is a cardinal rule that statutes are construed according to the intention, or at least according to the apparent or evident intention or purpose of the law-makers. . . . Accordingly, the primary rule of statutory construction, to which every other rule as to interpretation of particular terms must yield, is that the intention of the legislature must be ascertained if possible, and when once ascertained, will be given effect, even though it may not be consistent with the strict letter of the statute."

That the courts are not bound by the literal wording of a statute, is clearly stated in 23 California Jurisprudence, at page 734:

"We have noticed the general rule that the meaning of a statute is to be sought in the language used by the legislature. But this does not mean that the courts are always to be governed by the exact phraseology and literal meaning of every word or phrase employed. The primary rule of intention is to be first applied. And intention may be ascertained, in doubtful cases, not only by considering the words used, but also by taking into account other matters, such as the context, the object in view, the evils to be remedied, the history of the times and of legislation upon the same subject, public policy, contemporaneous construction, and the like. In other words, the courts will not blindly follow the letter of a law, when its purpose is apparent, to consequences which are inconsistent with that purpose; and this would seem to be particularly true when the results of a literal interpretation, if adopted, would be absurd."

Bearing in mind the foregoing rules of construction, what was the intent of the legislature when it enacted section 5.190

of the School Code as a statute in 1919? The law *then* was identical with the law *now*. At *that time* the Board of Medical Examiners granted certificates to practice to osteopathic physicians and surgeons, and the State Board of Education in turn granted them health and development credentials. They met the requirement of the section mentioned by being "holders of certificates to practice medicine and surgery", issued by the California Board of Medical Examiners. It was *then* the apparent and obvious legislative intent not to distinguish between graduates of medical schools and graduates of osteopathic schools. Each was accorded the same treatment when applying for credentials under the School Code. The effect of the Initiative Act of 1922 was to give the *same licensing power* to another Board—the Osteopathic. There is no question here of a change in *requirements* or *qualifications* on the part of the Board of Education or the legislature. They, in respect to this matter, have always been the same. It is a strange anomaly that an osteopathic physician who received his credentials to practice prior to the effective date of the Initiative Act of 1922, is now qualified to secure those identical credentials, while one who received such a certificate subsequent to that time is absolutely barred. The history of the legislation relating to the matter and the surrounding facts and circumstances point to the conclusion that the legislature made no distinction between different schools of healing when it enacted the law relating to qualifications of one applying for health and development credentials before the State Board of Education, and when they used the words "Board of Medical Examiners" in section 5.190 of the School Code, they intended to include any other board exercising identical powers in respect to licensing osteopathic physicians and surgeons. That the State Board acted in good faith and without any attempt at discrimination, we have no doubt. ■ In reaching this conclusion we have endeavored to follow the rule quoted above that "the primary rule of intention is to be first applied", and "that the courts will not blindly follow the letter of a law, when its purpose is apparent".

■ The contention of the state that there is a reasonable ground for discrimination between the two schools of healing upon the part of the legislature, has little bearing upon the question, as we must go back to the year of the enact-

ment,—1919. At that time, as we have seen, no distinction whatever was made between them—no attempt at any discrimination. The Board of Education, appellant herein, had no choice whatever between the two. It held itself bound by the literal wording of the law. It could not be seriously contended that if the State Board of Medical Examiners were to be designated by some other name to-morrow, the power of the State School Board to grant such credentials would be entirely destroyed. Neither do we believe that the separation of the power to issue osteopathic licenses was intended by the legislature to have that effect, and thus deprive hundreds of otherwise qualified practitioners of the right to engage in a gainful field—a right which they previously had enjoyed without protest.

What we have said on this question has merely to do with the certification of a physician and surgeon to engage in work connected with the public schools. We do not mean to hold that the school board of any city or county, or school district cannot, in the matter of employment, exercise its discretion and choose whom it desires. The credentials sought here merely qualify a physician to accept such employment.

The judgment is affirmed.

Pullen, P. J., and Thompson, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 22, 1940.