CHESED SHEL EMETH SOCIETY, a Corporation, Appellant, v. UNEMPLOYMENT COMPENSATION COMMISSION OF MISSOURI, and CARL J. HENRY, HARRY P. DRISLER and ELMER J. KEITEL, Members of the Unemployment Compensation Commission of Missouri.—No. 40001.—203 S. W. (2d) 454.

Division Two, June 9, 1947.

Rehearing Denied, July 14, 1947.

*Dubinsky & Duggan, Carl M. Dubinsky, Ragland, Otto, Potter & Embry, James A. Potter, Leon P. Embry,* and *Forrest P. Carson* for appellant.

728

*Charles F. Moseley* for respondents; *Michael J. Carroll* of counsel.

 TIPTON, J.—The question presented on this appeal is whether, under the unemployment compensation act, appellant is required to make contributions with reference to wages paid its employees. The Unemployment Compensation Commission of Missouri (hereafter referred to as the Commission) held appellant was liable. The Commission's decision was affirmed by the circuit court of Cole County, and that judgment was duly appealed to this court.

Appellant contends that it is organized and operated exclusively for charitable and religious purposes, and that no part of its earnings inure to the benefit of any private shareholder or individual. For these reasons it contends that it is exempt from making contributions under the unemployment compensation act by virtue of Section 9423, R. S. Mo., 1939, as amended by Laws of Missouri, 1943, pages 920 and 921. Subsection 6 and paragraph F of that section read:

"(6) Shall not include: . . .

"(F) Service performed in the employ of a corporation, community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual."

The Commission adopts the facts as stated in appellant's brief. We will do likewise without quotation marks.

The appellant, Chesed Shel Emeth Society, was incorporated by pro forma decree of the circuit court of the city of St. Louis, in 1889 under the statute providing for thus incorporating benevolent, religious, scientific, educational and miscellaneous associations. Its objects were for mortuary purposes, providing a proper and decent funeral and burial for deceased members owning and managing a burial ground for that purpose, for decently and properly burying deceased members at the expense of the Society, and for buying and maintaining a suitable hearse and horses and other proper paraphernalia for carrying out such purposes. At the time the Missouri unemployment compensation law was enacted, the charter powers of the Society had been, by decree of the circuit court of the city of St. Louis, enlarged to provide for owning and maintaining a synagogue for the purpose of holding service for deceased members in accordance with the laws of the Orthodox Jewish Faith. In 1940, by decree of the circuit court of the city of St. Louis, the charter of the appellant Society was again amended to correct the spelling of its corporate name and to extend its charter powers so that its charter as thus amended in the particulars referred to is as follows:

730.

"Amended Articles of Agreement

"(1) The name of said Association shall be Chased Shel Amas (Faith in the Truth):

"(2) Its object shall be for the purpose of acquiring land, owning and conducting a cemetery, for the burial of its members, and for all other persons of the Jewish faith whose interment and for whose interment arrangements may be made in accordance with the By-Laws which are now in force or which may hereafter be enacted.

"To furnish to its members a grave in the membership line set apart in said cemetery; also to furnish to its members a hearse; also to furnish to its members misaskim; to furnish to its members the digging of a grave for burial purposes; also to furnish the member one limousine for the members of the Organization accompanying the deceased to the cemetery, and also to furnish unto the member, if requested by the family of said member, a group of males necessary for the purpose of a minion for a period of one week from the death of said member to appear at the home of the deceased member for religious services. All the above to be furnished to the member without any expense.

"Further, that said Association may purchase or otherwise acquire and hold title to burial grounds, congregation and any and all such other property, real or personal, as its purposes may require.

"Further, that said Society shall be authorized to sell lots for burial rights, both to its members and to all other persons of the Jewish Faith.

"Further, that the Association may provide for free burial of people of the Jewish Faith who are unable to pay for such burial, in accordance with the Constitution and By-Laws of the Association.

"(3) The funds of this Association shall not be distributed or paid to its members by way of dividends, but said funds shall be kept inviolate and used only for the purposes of the Organization, provided, however, that the Society may pay its officers, agents, servants and employees just and reasonable compensation for their services.

"Further, that said Association at its annual meeting shall have the right to appropriate a sum or sums for any educational or charitable institution or institutions, and to delegate to the Board of Directors of said Association to select what institution or institutions shall be the recipient of such charitable donations, and the sum or sums to be given to such institution or institutions."

The appellant Society owns a cemetery in which members may purchase burial plots and in which nonmembers of the Jewish Faith may be buried where there is no one able to pay for such burial. Other than such income as it may be assumed the Society has on investment of its cemetery funds, the charter provides that the funds of the Society are to be derived from voluntary contributions, from

assessments of initial membership fees and dues, from the sale of lots for burial purposes and from such other sources as are consistent with the purposes of the organization and in accordance with the by-laws of the organization. The funds and income of the Society, after payment of its operating expenses and such donations as are made to charitable causes, are preserved for the perpetual care, maintenance, improvement and (when necessary) expansion of the burial grounds and none of such funds are distributable to the members. The organization operates and functions on a nonprofit basis.

The appellant Society makes contributions averaging over six thousand dollars annually to various charitable causes upon motions made at the annual meetings of the membership, and furnishes free burials for nonmembers, of the Jewish Faith, where there is no one able to pay for such burials.

The appellant Society also owns, maintains and operates, a synagogue which is used to hold memorial services for departed members in accordance with the ritualistic requirements of the Orthodox Jewish Faith.

The organization, in addition to the services performed for the indigent of the Jewish Faith, digs the grave of a deceased member, furnishes a limousine for the funeral service and an escort for the funeral service, attends to the ritualistic washing of the body and performs the other Orthodox Jewish ritualistic ceremonies for a deceased member.

The cemetery and synagogue have been treated as exempt from taxation. After an investigation, the Internal Revenue Department of the United States Treasury held that this organization was exempt, both from federal income tax and capital stock tax, and from the social security act.

The affairs of the appellant Society are administered by a Board of Directors and officers, who are elected annually. The salaries of various employees are fixed at the annual meetings. No salary is fixed for the President and certain other officers of the Society at any annual meeting for the ensuing year, but at each annual meeting payments, referred to as "tokens," are voted to them, taking into consideration the services rendered by them during the past year and the financial condition of the Society.

The two questions before us, as stated by appellant, are: Is the appellant exclusively a charitable and religious organization, or exclusively a charitable or religious organization? (2) Does any part of the net earnings of the appellant inure to the benefit of a private shareholder or individual?

The effect of the Commission's findings was that appellant was not exclusively a charitable or religious organization.

In the case of Lexington Cemetery Co., Inc., v. Commonwealth ex rel. Unemployment Compensation Commission, 297 Ky. 851, 181 S. W.

2d 699, the Court of Appeals of Kentucky ruled that a cemetery was not a charitable organization within the meaning of the Kentucky unemployment compensation act. In that case, the cemetery had no capital stock and was a non-profit corporation with all its receipts ▉ devoted to the upkeep and beautification of the grounds. Any surplus went to the "permanent fund for the perpetual care, maintenance and upkeep of the cemetery and the land owned and used in connection therewith." The lot owners obtained only burial rights in the form of deeds, and they elected a board of trustees who managed the cemetery and served without compensation. 1383 Federal soldiers were buried there by the United States Government at the cost of only one dollar to the Government; the Confederate Veteran Association was conveyed a lot for the same consideration where 181 Confederate soldiers were buried.

The Children's Home and the Orphan's Society of Lexington, charitable organizations, own lots upon which they bury their indigent dead and on which 259 paupers were buried upon orders and directions from the various churches in the city of Lexington. The Henry Clay Memorial Association owns a lot upon which it has erected a monument to that statesman, and upon which the State has made expenditures from time to time.

In holding that the cemetery was not a charitable organization under the unemployment compensation act of Kentucky, that court said:

"The Company bases its claim for exemption as a charitable corporation on KRS 341.050 (5) (h) which provides 'covered unemployment' does not include:

" 'Service performed in the employ of a corporation, community chest, fund or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting to influence legislation.'

"The quoted provision in our Act is taken verbatim from the federal Social Security Act, 42 U. S. C. A., Sec. 409(b) (8), which in turn was copied word for word from the exemption appearing in the federal income tax statute, 26 U. S. C. A., Int. Rev. Code, Sec. 101 (6). Immediately preceding subsection 6 of the federal income tax exemption is subsection 5 which latter exemption reads:

" 'Cemetery companies owned and operated exclusively for the benefit of their members or which are not operated for profit; and any corporation chartered solely for burial purposes as a cemetery corporation and not permitted by its charter to engage in any business not necessarily incident to that purpose, no part of the net earnings of which inures to the benefit of any private shareholder or individual.'

"The fact that the Congress lifted subsection 6 from the exemptions of the federal income tax law and incorporated same in the national Social Security Act and omitted therefrom subsection 5 of such income tax exemptions shows a clear intention upon its part not to exempt cemeteries from the national social security tax. As the Kentucky Unemployment Compensationn Act copies the exemptions contained in the national Social Security Law and tracks the latter closely for the purpose of securing federal aid, it follows that our General. Assembly likewise expressed an intention not to exempt cemeteries from the State Act." 181 S. W. 2d 699, l. c. 701.

The Supreme Judicial Court of Massachusetts in the case of Proprietors of Cemetery of Mount Auburn v. Fuchs et al., 25 N. E. 2d 759, the Supreme Court of Wisconsin in the case of Industrial Commission v. Woodlawn Cemetery Ass'n., 287 N. W. 750, and the Supreme Court of Minnesota in the case of Christgau v. Woodlawn Cemetery Ass'n., Winona, 293 N. W. 619, ruled that cemeteries which operated without profit were not public charities under the unemployment compensation laws of those states for the reasons stated in the case of Lexington Cemetery Company, Inc., v. Commonwealth of Kentucky, supra.

Subsection 6 and paragraph F of Section 9423, supra, quoted above, is taken word for word from the federal social security act, 42 U. S. C. A., Sec. 409 (b) (8), which, in turn, was copied verbatim ▆▆▆ from the exemption appearing in the federal income tax statute, 26 U. S. C. A., Int. Rev. Code, Sec. 101 (6). While Congress did borrow from the exemptions of the federal income tax law (subsection 6) the definitions of religious, charitable and numerous other organizations, it did not borrow from this law the exemption (subsection 5) with reference to cemeteries, which shows a clear intent upon its part not to exempt cemeteries from the national social security tax. Our unemployment compensation act copies the exemptions contained in the national social security law and follows the law closely for the purpose of securing federal aid. It follows that our lawmakers likewise expressed an intent not to exempt cemeteries from the state act.

The fact that the Internal Revenue Department of the United States Treasury ruled that the appellant was exempt from federal income tax is of no importance in determining the questions before us. We have seen that the federal income tax law specifically exempts cemeteries from that tax by subsection 5.

▆▆▆ The present charter of the appellant provides that it shall be authorized to sell lots for burial purposes, both to its members and to all other persons of the Jewish Faith, and that it may provide free burial of people of the Jewish Faith who are unable to pay for such burial. This charter provides that at its annual meeting it may appropriate a sum or sums for any educational or charitable institution or

734

institutions selected by the Board of Directors. The record shows that appellant has furnished free burial to persons of the Jewish Faith who were unable to pay for such burial, and that it has donated annually about six thousand dollars to charities. But these facts do not entitle it to exemption within the meaning of subsection 6, paragraph F, Section 9423, supra, because under this subsection the organization must be exclusively organized and operated as a charity.

We are of the opinion that the primary and dominant objective purpose of the appellant, as expressed in its charter and the manner in which it conducts its business, is to operate a cemetery for the burial of persons of the Jewish Faith. In order to fall within the claimed exemption, an organization must be devoted to charitable purposes exclusively. This plainly means that the presence of a single non-charitable purpose, if substantial in nature, will destroy the exemption, regardless of the number or importance of truly charitable purposes. Northeast Osteopathic Hospital v. Keitel, 355 Mo. 740, 197 S. W. 2d 970. We are of the opinion that the appellant is not exclusively a charitable organization so as to bring it within the exemption of the unemployment compensation act of this State.

■ The appellant maintains and operates a synagogue for memorial services and worship. This synagogue is primarily used in connection with the operation of the cemetery. Appellant does not contend that it is exclusively a religious organization. It is not a religious organization, even though religious rites accompany the burial of the dead in the cemetery. Proprietors of Cemetery of Mount Auburn v. Fuchs et al., supra. We hold that the appellant is not exclusively a religious organization under the above quoted exemption clause.

Since the appellant is neither exclusively a charitable or religious organization, it is not necessary for us to decide if the "tokens" given annually to appellant's president and other officers are earnings which inure to the benefit of any private shareholder or individual.

It follows that the judgment of the trial court should be affirmed. It is so ordered. All concur.