224 P.2d 529

**In re GEM STATE ACADEMY BAKERY.**

No. 7608.

Supreme Court of Idaho.

April 6, 1950.

On Rehearing Nov. 21, 1950.

Willis C. Moffatt, Boise, Doane & Furey, Boise, for appellant.

534

Robert E. Smylie, Atty. Gen., John W. Gunn, Asst. Atty. Gen., for respondent.

TAYLOR, Justice.

Following a hearing the Industrial Accident Board affirmed a determination by the Employment Security Agency, to the effect that the Gem State Academy Bakery is liable for the payment of contributions to the employment security fund, upon remuneration paid to truck drivers, engaged in the sale and delivery of bakery products, and to the manager of the bakery. The facts are not in dispute and are succinctly stated in the findings of the board:

"I. The real employer or proprietor herein is the Idaho Conference of Seventh Day Adventists, a religious organization, which is mainly supported by contributions from its church membership. Among its activities it conducts schools, of which the Gem State Academy is one. This is a boarding school which it maintains and operates at Caldwell, Canyon County, Idaho, where approximately 150 pupils are educated not only in religion, but intellectually and vocationally. As an essential part of its vocational system the school maintains a dairy, a cafeteria and a bakery, the latter called Gem State Academy Bakery.

"II. The bakery for a number of years was privately owned and operated as the College Heights Bakery. During that

period the Academy had an arrangement with the owner under which a number of its students were vocationally trained therein. The owner desiring to discontinue the business, on April 1, 1948, the Conference purchased the bakery at an approximate cost of $22,000.00 for the purpose of continuing it as a unit in the Academy's vocational educational program for from 30 to 40 students, something less than a third of the Academy's total enrollment.

"Since then the bakery has been operated by the Conference through the Academy under a manager employed for that purpose. The manager receives what is termed a 'missionary wage' in the Adventists' denominational parlance, the same as the Conference pays to its other workers and teachers. According to the financial statements, in its book-keeping, half of the manager's salary is charged as 'selling expense.'

"III. The bakery employs students who are taking the course, such employment being considered as part of their vocational training. In part their employment has a charitable aspect, since some of them could not otherwise attend school. So far as needed bakery products are supplied to the Academy and cafeteria.

"A local sales-room is maintained, presumably with student help, where products are sold at retail to the public.

"No commercial advertising of the bakery is carried on over the radio or in the newspapers.

"Bakery products are sold at retail on routes in the more remote rural sections in and around the trade area tributary to Caldwell. For this purpose seven truck drivers are employed on a commission basis. Such employees are not teachers or students but members of the church with families. They make regular trips delivering to regular customers and from time to time solicit additional customers.

"Gross sales are shown currently to be somewhat in excess of $4000.00 per month. In book-keeping the receipts from the sale of bakery products are set up to offset expense and the profits, currently comparatively small, are turned over to the Academy or Conference.

"The whole operation of the bakery is subsidized by the Conference and gain is mostly reflected in capital account. The Conference as proprietor absorbs the loss, if any, and benefits from the profit, if any. No profit inures to the benefit of any individual."

The question presented is whether or not the employment involved is exempt from the operation of the Employment Security Law by the terms of section 72-1316 (a) (7), I.C.: "Service performed in the employ of a corporation, community chest, fund, foundation, or association organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of

any private shareholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting to influence legislation."

It is agreed that the Idaho Conference of Seventh Day Adventists is an association organized and operated for religious and educational purposes, and that no part of its net earnings inures to the benefit of any private shareholder or individual. All the earnings of the bakery, including those resulting from the sales made by the employees in question, are used by the conference in promotion of its religious and educational purposes. It also appears from the record that charity is one of its purposes, at least as an adjunct of its religious and educational activities.

In its rulings of law the board said: "It is to be noted that the first test of whether employment is covered or not is to be determined from the standpoint of the *individual* performing the service. To be exempt that service must be in an *operation* devoted *exclusively* to religious or educational purposes." It is apparent that the board has adopted a rule of strict construction of the exemption, with particular emphasis upon the word "exclusively." When this law was first adopted in Idaho (Ch. 12, 1936, 3rd Ex. Session), under an exemption practically identical in terms with that quoted above, the following Administrative interpretation was adopted: "For the purpose of the exclusion the nature of the service is immaterial; the

statutory test is the character of the organization for which the service is performed." 3 C.C.H. Unemployment Insurance Service, page 15,033. On the face of it quite the opposite of the rule stated by the board.

The language of our exemption was taken from the federal Social Security Act of 1935, 42 U.S.C.A. § 301 et seq., which in turn was taken by the Congress from its own Internal Revenue Code, Rev. Code, section 101(6), 26 U.S.C.A. § 101(6), the language of the exemption having been carried down from 1913. We also copied it in our income tax law. Property Relief Act of 1931, 63-3029(4), I.C. The general rule is that the construction of a statute of another state by its courts, if reasonable, will be followed by us, upon the subsequent adoption of the statute by our legislature. State v. Taylor, 59 Idaho 724, 87 P.2d 454; Bishop v. Morrison-Knudsen Co., 64 Idaho 806, 137 P.2d 963. As to our income tax law, the legislature made this rule of construction mandatory. Section 63-3085, I.C.; John Hancock Mut. Life Ins. Co. v. Haworth, 68 Idaho 185, 191 P.2d 359. And in our Employment Security Law itself the legislature tacitly recognizes the applicability of the rule to the construction of that law in the provisions for state cooperation with the administration of the federal act. Sections 72-1302(b) and 72-1341, I.C., as amended. Therefore, the construction of the exemp-

tion here considered, as found in the federal decisions, is quite compelling.

Trinidad v. Sagrada Orden De Predicadores, 263 U.S. 578, 44 S.Ct. 204, 205, 68 L.Ed. 458, is a decision concerned with the application of the same exemption to the income of a religious organization. It was rendered in 1924. The organization was possessed of large holdings of real estate, stocks of private corporations, and money loaned at interest, from which it derived the bulk of its income in rents, dividends and interest. It also received income from the sale of stocks, wine, chocolate and other articles. No part of the income inured to the benefit of any private stockholder or individual. The collector contended that it was not "operated exclusively" for the stated purposes, but was also operated for business and commercial purposes. The court said:

"Whether the contention is well taken turns primarily on the meaning of the excepting clause, before quoted from the taxing act. Two matters apparent on the face of the clause go far towards settling its meaning. First, it recognizes that a corporation may be organized and operated exclusively for religious, charitable, scientific or educational purposes, and yet have a net income. Next, it says nothing about the source of the income, but makes the destination the ultimate test of exemption.

"Evidently the exemption is made in recognition of the benefit which the public derives from corporate activities of the class named, and is intended to aid them when not conducted for private gain. Such activities cannot be carried on without money; and it is common knowledge that they are largely carried on with income received from properties dedicated to their pursuit. This is particularly true of many charitable, scientific and educational corporations and is measurably true of some religious corporations. Making such properties productive to the end that the income may be thus used does not alter or enlarge the purposes for which the corporation is created and conducted. * * *"

The court observed that sales referred to were not made to the public in competition with others, and further said: "* * * That the transactions yield some profit is in the circumstances a negligible factor. Financial gain is not the end to which they are directed." The fact that the goods were not sold to the public does not appear to be an important factor. This is the view taken of the case by the C.C.A. First Circuit, in Santee Club v. White, 87 F.2d 5, 8.

With some exceptions the rule of liberal construction in favor of exemption suggested in the Trinidad case has since been followed by the federal courts under both the income tax and social security act. Cochran v. Commissioner, 4 Cir., 78 F. 2d 176; Koon Kreek Klub v. Thomas, 5 Cir., 108 F.2d 616; International Reform Federation v. District Unemployment Compensation Board, 76 U.S.App.D.C. 282,

131 F.2d 337; and Commissioner v. Orton, 6 Cir., 173 F.2d 483. Oklahoma State Fair and Exposition v. Jones, D.C., 44 F.Supp. 630, 631, concerned the liability for contributions of a fair organization. Amusement activities, vaudeville, rodeo, etc., were carried on to augment its funds used for exempt purposes. These amusements were offered to the public, in competition with private concerns. The court said:

"The problem is thrown back upon the Court as to whether the amusement program, which undoubtedly from the broad scope and analysis of the evidence is being carried on as auxiliary and as supplementary financial aid to the wider range of the scientific and educational program of plaintiff, shall exclude plaintiff from the classification of operating exclusively for scientific and educational purposes."

"This Court has found no particular solace in the argument that statutes concerning employment and social security should require a narrower construction than those concerning income taxes where the language being construed is virtually identical. There is no satisfying basis for the suggestion."

The U. S. Court of Appeals for the District of Columbia in National Rifle Ass'n v. Young, 77 U.S.App.D.C. 290, 134 F.2d 524, applied the strict rule of construction. This case is cited and followed by the municipal court, D.C. in Better Business Bureau v. District Unemployment Compensation Board, 34 A.2d 614 (cited by respondent). In addition to the binding force of the decision of the circuit court, the municipal court points out that the charter of the Bureau gives it definite business purposes. On this latter ground the case is distinguished by the municipal court from Jones v. Better Business Bureau of Oklahoma City, 10 Cir., 123 F.2d 767, 769. In that case the court said: "While the general rule is that tax-exempt statutes are to be construed strictly in favor of the government, the rule does not apply to exemption statutes of the character here involved. Such a statute should be liberally construed so as to further rather than hinder its beneficent purpose. The purpose of this exemption is to encourage religious, charitable, scientific, literary, and educational associations not operating for the profit of any private shareholder or individual." See cases cited in the footnote.

State Courts have likewise quite generally followed the rule in favor of the exemption. Santa Fe Lodge No. 460 B.P.O.E., v. Employment Security Comm., 49 N.M. 149, 159 P.2d 312; Temple Lodge v. Tierney, 37 N.M. 178, 20 P.2d 280; Scripps Memorial Hospital v. California Employment Comm., 24 Cal.2d 669, 151 P.2d 109, 155 A.L.R. 360 and note; Virginia Mason Hospital Ass'n v. Larson, 9 Wash.2d 284, 114 P.2d 976. This court in Big Wood Canal Co. v. Unemployment Compensation Division, 61 Idaho 247, 100 P.2d 49, 50, states the rule applicable to exemption from "a

general tax" and then applies the rule favoring the exemption of agricultural labor." This is in harmony with Stromberg Hatchery v. Iowa Employment Security Comm., 239 Iowa 1047, 33 N.W.2d 498. The Iowa court held that the exclusion of agricultural labor was not intended to exclude certain classes of employees from the benefits of the act, but was to exclude the industry from its burdens.

Respondent cites, Talley v. Unemployment Comp. Division, 63 Idaho 644, 124 P.2d 784; Webster v. Potlatch Forests, 68 Idaho 1, 187 P.2d 527; and Carnegie-Illinois Steel Corp. v. Review Board, 117, Ind.App. 379, 72 N.E.2d 662. These cases are concerned with claims of unemployed workers seeking to establish eligibility, and do not involve the question of covered employment under the exemption provisions. Hence the rule they announce has no application here.

Respondent also cites, Maine Unemployment Compensation Comm. v. Androscoggin Jr., Inc., 137 Me. 154, 16 A.2d 252; Unemployment Compensation Comm. v. Harvey, 179 Va. 202, 18 S.E.2d 390; and Unemployment Comp. Dept. v. Hunt, 17 Wash.2d 228, 135 P.2d 89. These cases involve the question of whether the particular employment is covered by reason of the master and servant relationship. We are not concerned with that provision of the statute in this case. In Murphy v. Concordia Publishing House, 348 Mo. 753, 155 S.W.2d 122, 136 A.L.R. 1461 and note, and Northeast Osteopathic Hospital v. Keitel,

355 Mo. 740, 197 S.W.2d 970 (also cited), exemption was denied because charter provisions included non-exempt purposes. The words of the statute, "organized and operated" import two distinct propositions. Accordingly, exemption has been denied where the charter or articles of incorporation declare a purpose which is not exempt. Exemption is also denied, without reference to the charter, where the organization is operated for a non-exempt purpose. In such cases, however, the courts do not deny the exemption if the non-exempt activity is merely incidental to the main purpose of the organization, and all of the income from the activity is devoted to such purpose. Trinidad v. Sagrada Orden De Predicadores, supra.

In the case before us, charter provisions are not referred to. It is admitted that the organization's general purposes are entirely within the exemption, and that all of its income is devoted to such purposes. The sale of its surplus bakery products appears to be incidental only to such purposes.

In 1945 the question was again before the Supreme Court in Better Business Bureau v. U.S., 326 U.S. 279, 66 S.Ct. 112, 114, 90 L.Ed. 67. Referring to the rule of the Trinidad case, the court said, "It is unnecessary to decide that issue here." The petitioner's claim of exemption, as an organization devoted exclusively to scientific and educational purposes, was denied on the ground that its activities were largely devoted to commercial ends, and that its

charter provided for these non-exempt objects. The court said:

"* * * it being apparent beyond dispute that an important if not the primary pursuit of petitioner's organization is to promote not only an ethical but also a profitable business community. The exemption is therefore unavailable to petitioner." and

"* * * Petitioner's activities are largely animated by this commercial purpose."

The general proposition is stated by Cooley as follows: "While in some states exemptions of religious, charitable and educational property or institutions are strictly construed, the better rule seems to be that laid down in some states requiring a liberal rather than a strict construction in such cases or at least that the same strictness of construction will not be indulged where the exemption is of such institutions." 2 Cooley, Taxation, 4th Ed., page 1415.

However, the question as to "Liberal" or "strict" construction is secondary in importance to that of uniformity with the federal decisions. Both the federal and the state statutes contemplate cooperation, each with the other, and in interdependent operation of the two administrations. Both are directed toward a single objective, and both having used the same language, a common meaning should prevail. As urged by respondent, section 72-1302, I.C., containing the legislative declaration of public policy, requires a liberal and broad interpretation of the act as a whole, in order to accomplish its humanitarian purposes. Webster v. Potlatch Forests, supra. It is nonetheless evident that the exemption, with which we are concerned here, was intended to encourage religious, charitable, scientific, literary, and educational organizations by relieving them of the burden of the tax, and thus promoting the accomplishment of their beneficent purposes. This also calls for a liberal interpretation. Thus we are confronted with a clash of two worthy objectives. If a choice must be made between the two, then that choice must be made by the legislature, not the courts. The same conflict has arisen in the application of the exemptions under the income tax law, and the same or similar exemptions under the Social Security Act. The problem is stated and the remedy suggested (as to charities) by the compiler of the note in 55 Harvard Law Review 1056: "* * * A liberal interpretation under the income, estate, and gift taxes encourages charities at the expense of the general taxpayer, while the same interpretation of the exemption under the Social Security Act encourages them at the expense of their employees. * * * But the difficulties inherent in overcoming the coincidence of phrasing suggests that the remedy lies only with Congress. * * If interpretation is to be uniform, courts should not deny exemptions under the Social Security Act without carefully examining the tax consequences of its inter-

pretation under other federal taxes." Here, also, it would seem that if a different rule of exemption is to be applied to cases coming under our state income tax law than is to be applied to those within the purview of the Employment Security Law, the differentiation must be supplied by the legislature.

The determination and the wisdom of such policies rests with the legislative department. " * * * The wisdom of omitting from the coverage of that Act those people who are employed by religious corporations is a matter for the Congress and not for us." O'Leary v. Social Security Board, 3 Cir., 153 F.2d 704, 707.

We conclude that the appellant is not required to make the contributions claimed by respondent. The order is reversed. Costs to appellant.

HOLDEN, C. J., and KEETON, J., concur.

GIVENS, Justice (dissenting).

The majority rely upon liberal construction in favor of exemptions from taxation, and uniformity of statutory construction and interpretation, and because the Unemployment Compensation statute as to exemptions is worded exactly as the Income Tax statute, hold the constructions given the income statute to the effect that it is the use made of the income and not its source which determines the right of exemption are to be applied to the Unemployment Compensation statute.

According controlling emphasis to the liberality of exemptions is contrary to the previous holding of this court, as shown by cases cited hereafter, and completely disregards the Unemployment Compensation statute and its construction. No reason is given why greater sanctity should be accorded exemptions of a religious or educational institution from the payment of unemployment compensation tax than from ad valorem taxes.

■ Such interpretation entirely overlooks the rule of statutory construction that the purpose and intent of the Legislature in a statute is to be construed in the light of enacting it.

" 'In determining the meaning of a statute, the particular mischief which it was designed to remedy and the history of the period and of the act itself may be considered.' " Eugene School Dist. No. 4 v. Fisk, 159 Or. 245, 79 P.2d 262, at page 267.

" ' * * * And intention may be ascertained, in doubtful cases, not only by considering the words used, but also by taking into account other matters, such as the context, the object in view, the evils to be remedied, the history of the times and of legislation upon the same subject, public policy, contemporaneous construction, and the like. In other words, the courts will not blindly follow the letter of a law, when its purpose is apparent, to consequences which

are inconsistent with that purpose; and this would seem to be particularly true when the results of a literal interpretation, if adopted, would be absurd.'" Jordt v. California State Board of Education, 35 Cal.App.2d 591, 96 P.2d 809, at page 811.

"It is a fundamental rule that a statute should be construed in the light of the history of the times and the conditions which prompted its enactment." Kelly v. Kane, 34 Cal.App.2d 588, 94 P.2d 384, at page 386.

"Also, in enforcing the command of a statute, both the policy expressed in its terms and the object implicit in its history and background should be recognized." Shafer v. Registered Pharmacists Union Local 1172, 16 Cal.2d 379, 106 P.2d 403, at page 406.

"'However, this court will not blindly follow the construction given a particular statute by the court of a state from which we borrowed it, when the decision does not appeal to us as founded on right reasoning.'" In re Strode's Estate, 118 Mont. 540, 167 P.2d 579, at page 582; State v. District Court, 119 Mont. 222, 173 P.2d 896, at page 902, 169 A.L.R. 827.

■ Interpretation of scope and meaning of words in a statute will be given like construction in a subsequent statute only where a similar setting exists. Perry v. Jordan, Cal., 207 P.2d 47, at page 50.

We are construing and applying the Unemployment Compensation law, not the Income Tax statute. It is imperative, there-fore, that in construing the Unemployment Compensation Law, this distinction be kept in mind.

■ The intent and purpose of both the State and National governments in enacting the Unemployment Compensation statute was not to raise money for revenue purposes, but to raise money to do away with unemployment, Sec. 72-1302(a), I.C.; such tax going into a special fund for that sole purpose, Sec. 72-1346, I.C., and the administration of the statute was to be extended liberally to all those who, under such liberal construction, could be held to come within its purview. No such intent and purpose was in the mind of the legislature in imposing the Income Tax, which merely goes into the general fund, Sec. 63-3073, I.C. Lexington Cemetery Co. v. Commonwealth, 297 Ky. 851, 181 S.W.2d 699, at page 703.

■ Exemptions from ad valorem taxes as applied to eleemosynary or charitable institutions are to be strictly construed against the exemptions, Bistline v. Bassett, 47 Idaho 66, at page 71, 272 P. 696, 62 A.L.R. 323; 144 A.L.R. 1485; involving a hospital claimed exempt as charitable. Not only has this rule been followed generally, Andrews v. North Side Canal Co., 52 Idaho 117, at page 123, 12 P.2d 263; Lewiston Orchards Irr. Dist. v. Gilmore, 53 Idaho 377, at page 383, 23 P.2d 720; Intermountain Agricultural Credit Ass'n v. Payette Co., 54 Idaho 307, at page 311, 31 P.2d 267, but has likewise been applied to the Unemployment Compensation Law; Big Wood Canal

Co. v. Unemployment Compensation Division, 61 Idaho 247, at page 251, 100 P.2d 49; *whether property or excise tax,* Batt v. Unemployment Compensation Division, 63 Idaho 572, at page 581, 123 P.2d 1004, 139 A.L.R. 1157; Meader v. Unemployment Compensation Division, 64 Idaho 716, at page 720, 136 P.2d 984; see also California Employment Commission v. Betthesda Foundation, 54 Cal.App.2d 348, 128 P.2d 874, at page 875. Strict exemptions have been applied against religious organizations, Watchtower Bible & Tract Soc. v. Los Angeles County, 30 Cal.2d 426, 182 P.2d 178, at page 180.

This court has likewise, in line with all authorities, held that the Unemployment Compensation law must be liberally construed to the end that its humanitarian purposes be accomplished; Talley v. Unemployment Compensation Division, 63 Idaho 644, at page 649, 124 P.2d 784; Hagadone v. Kirkpatrick, 66 Idaho 55, at page 59, 154 P.2d 181; the latest such expression being Webster v. Potlatch Forests, Inc., 68 Idaho 1, at page 15, 187 P.2d 527.

Appellant seeks relief from the payment of the unemployment compensation tax covering the employment of drivers who sell and deliver bakery goods to the general public on a commission basis—clearly a commercial activity—on the ground that the over-all organization is organized and operated exclusively for religious, charitable and educational purposes. Exemptions under similar situations have been sought in innumerable instances from the imposition of ad valorem taxes and, in a more limited number of instances, from the payment of income taxes, but few cases have been found which decisively consider the point before us; namely, whether a commercial activity carried out by a concededly exempt organization may, by reason of the over-all characteristics of the organization, be exempt from unemployment compensation taxes.

Three views as to tax exemptions have been expressed: one, that the over-all characteristic of the organization clothes all its activities, regardless of the otherwise non-exempt nature thereof, with immunity as for illustration, Hedding Camp Meeting Ass'n v. Epping, 88 N.H. 321, 189 A. 347. This view is based largely upon a liberal construction in favor of such eleemosynary organizations and which, when applied to unemployment compensation taxes, either totally disregards or subordinates the enjoined liberal construction of such law.

The other extreme is that if the organization, though generally and in the first instance of an exempt class, engages in any commercial operation, it loses its immunity; for example, Sisterhood of Holy Nativity v. Tax Assessors of City of Newport, 73 R.I. 445, 57 A.2d 184; Smith v. Brooklyn Bar Association, 266 App.Div. 1038, 44 N.Y.S.2d 620; Id., 292 N.Y. 593, 55 N.E.2d 368, 2nd case.

"We come, then, to consideration of the activities which, appellees argue, show that

544

appellant is not operated exclusively for scientific or educational purposes. The fact that most of its activities do inure to the public benefit is not alone sufficient to meet the requirements of the exemption provisions of the statute. The test is not a balance or equation to be found between those which do and which do not fulfill the purpose of its organization. The question is whether there is a substantial part of its activities which in nowise contributes to the exempted purposes of its organization and cannot be said to comply with the exemption features of this act. The act must be liberally construed to the end that provision be made for unfortunate persons out of employment. (Cases.) In the last cited case attention was called to the reliance placed upon cases arising under the Workmen's Compensation Act, the Federal Labor Standards Act, 29 U.S.C.A. § 201 et seq., and the Federal Bankruptcy Act, 11 U.S.C.A. § 1 et seq. It was held that decisions under these acts cannot be of avail; that the Unemployment Compensation Act is far different in its basic purposes from the other acts referred to. Nor are the decisions and rules of the Federal Bureau of Regulations, relating to social security tax, binding on the courts." Cases.

"The burden is upon the appellant to prove that it has satisfied the exemption requirements set forth in section 2(f)(6) (G) [Smith-Hurd Stats. Ill. c. 48, § 218(f)(6) (G)]. (Cases.) We are convinced, from the record here presented and under the view which this court has taken of the exemptions under the Unemployment Compensation Act, that appellant is not exempt from contributions under that act." American Medical Ass'n v. Board of Review, 392 Ill. 614, 65 N.E.2d 350, at page 353.

The middle course, which has received judicial sanction, is that, with due regard to the strict construction of the exemption against one claiming it, yet recognizing the beneficence of such eleemosynary institutions, and at the same time the purposes of the Unemployment Compensation law and the necessity for liberally construing the same, each activity is to be judged by itself.

*Thus those activities carried on clearly within the religious, scientific, literary and educational fields are to be exempt; and those activities, though carried on by such organizations, if of a commercial nature, require that the employees in such activities be given the protection of the Unemployment Compensation Law.*

" * * *, Render therefore unto Caesar the things which are Caesar's; and unto God the things that are God's." Matthew 22:21.

This last, or middle course, takes into consideration all of what otherwise might be considered, but are not essentially conflicting views and accords every facet of the situation due regard, and in principle is supported by the following authorities:

In re F. H. Hogue, Inc., 67 Idaho 398, 183 P.2d 826, clearly stated an employer

could be engaged in both covered and exempt activities; thus, required to pay unemployment compensation tax on some employees and not on others. Thus recognizing split employment is State v. Hoover, 200 Wash. 277, 93 P.2d 346.

"The general rule in such instances (exemptions) is that the use made of the property controls, rather than the charitable character of the owner.—

&ast; &ast; &ast; &ast; &ast; &ast;

"Now, getting back to the instant case, one of the chartered objectives of the Publishing House is the advancement and extension of knowledge and learning among people generally; and it is authorized to publish and sell (for profit) books and literature, and to acquire and operate real estate and publishing plants for that purpose. Any bona fide schoolbook or encyclopedic publishing concern could qualify under that provision. Nor do we think the situation is altered here by the facts that nearly all the sales for profit were of religious literature and made mostly to members of the denomination. Many books are sold competitively and for profit to a limited public, such as law books to lawyers. Appellants' objectives are commendable, and there is no doubt that a charitable trust may operate for profit. But the only question here is whether the land on which appellants' publishing enterprise is conducted is tax exempt; and our Constitution says tax exempt land must be used *exclusively* for religious worship or purposes *purely*

charitable. A competitive commercial business operated for profit does not comply with that requirement, even though the profits are devoted to religion." Evangelical Lutheran Synod etc. v. Hoehn, 355 Mo. 257, 196 S.W.2d 134, at page 143.

True, the above case involved ad valorem and excise taxes, but it upholds the proposition that an adjunct of an exempt organization is exempt and accordingly, to be treated separately. The same court pursuing the same general question, thus concludes in Northeast Osteopathic Hospital v. Keitel, 355 Mo. 740, 197 S.W.2d 970, at page 976: "This brings us to an examination into the meaning of the word 'exclusively' as used in Clause (F), Section 9423 (i) (6), supra. In cases involving questions of exemption from property taxes under Section 6, Article X of the (former) Constitution of Missouri of 1875, Mo.R.S.A.; and Section 10937, R.S.1939, Mo.R.S.A. § 10937, it was said 'used exclusively for religious worship &ast; &ast; &ast; or for purposes purely charitable,' has reference to the primary and inherent use as over against a mere secondary and incidental use. Salvation Army v. Hoehn, supra [354 Mo. 107, 188 S.W.2d 826]; Y.W.C.A. v. Baumann, 344 Mo. 898, 130 S.W.2d 499. In examining these cases it has been noticed that the activities of a corporation claiming the exemption must be in accord with the *primary* (exempted) objective and round it out or dovetail into it—though slight, temporary, or in a word immaterial, deviations will not

be fatal. Evangelical Luthern Synod et al. v. Hoehn, supra. The tax exemption considered in these cases was dependent upon the *use* of the property for those (named) exclusive purposes (although 'the owner must (also) be dedicated to those purposes. To that extent the ownership characterized the use.' Evangelical Luthern Synod et al. v. Hoehn, supra, 196 .S.W.2d 143), whereas, in our case, the exemption is dependent upon the *purposes* of Hospital's organization and operation. The objectives of the Y.W.C.A. and the Salvation Army in the Y.W.C.A. and Salvation Army cases were both admittedly charitable, and the question was whether their activities conformed. Slight deviations were held not to be fatal. Substantial deviations would have been fatal. Coming back to our case, we were treating with the question of Hospital's *exclusively* charitable organizational purposes. Manifestly the exemption (Clause (F), Section 9423(i) (6), supra) is in recognition of the great benefit the public derives from institutions exclusively charitable. A substantial non-charitable purpose of Hospital's organization should be fatal. Otherwise, by a non-charitable purpose of organization, a corporation although it were also organized for a charitable purpose, would or could, in the exercise of its non-charitable power, exploit its non-charitable purpose and destroy or materially shade the fullness of its committed service in the public welfare; and (here more pointedly) all the while defeat the purpose of the Law under the guise of the charitable purpose. See the import given the word 'exclusively' as used in an excluding clause identical with (in so far as material here) and in legislative enactment of kindred basic legislative purpose as the excluding Clause (F), Section 9423(i) (6), supra, in the case of Better Business Bureau of Washington v. United States, 326 U.S. 279, 66 S.Ct. 112, 114, 90 L.Ed. 67, wherein Better Business Bureau was claiming exemption from social security taxes as a corporation organized and operated exclusively for educational purposes within the meaning of Section 811(b) (8) of the Social Security Act, 42 U.S.C.A. § 1011(b) (8). Said the court, 'In this instance, in order to fall within the claimed exemption, an organization must be devoted to educational purposes exclusively. This plainly means that the presence of a single non-education purpose, if substantial in nature, will destroy the exemption regardless of the number or importance of truly educational purposes.' "

■ Use, i. e., operation, not destination of tax is controlling. Battelle Memorial Institute v. Dunn, 148 Ohio St. 53, 73 N.E.2d 88, at page 92: "Of course, it is the use of the property and not the use of the proceeds derived therefrom, which is the test of exemption or nonexemption from taxation under the statute." Cases cited.

Anent the argument that the bakery is operated entirely for educational purposes, this statement is pertinent: "After all is

said, the main reason for this instruction is to better the social, economic and political status of appellants' members—certainly a commendable purpose—but the insurance companies, Fuller Brush Salesmen, hardware organizations and many other commercial companies call their employees in at stated intervals and require them to attend a school of instruction to imbibe selling talk and trade techniques to make them more efficient in their line. If appellants' logic is followed to its ultimate conclusion, there would be no end to the organizations that would be here seeking tax exemption on the ground that their property was devoted to an educational purpose." Johnson v. Sparkman, 159 Fla. 276, 31 So.2d 863, 864, 172 A.L.R. 1067, at page 1069.

Applying the rule as to exemptions in the Income Tax statute completely disregards and purpose and effect that must be given the Unemployment Compensation Act, and when the subject is really examined, there is no more reason to apply income tax interpretations than ad valorem rules, except their naked uniformity, resulting in lack of uniformity with ad valorem taxation.[1] If, however, the rule as to ad valorem taxes; namely, property used in the activities of a business nature, thus identical in principle with 'operation,' though conducted by an exempt organization, is taxed as other property though on other activities the organization is exempt, effect is given both. While not identical, there is no great dissimilarity between the exemptions from ad valorem taxes:

"2. Property belonging to any religious corporation or society of this state, used exclusively for and in connection with public worship, and any parsonage belonging to such corporation or society and occupied as such, and any recreational hall belonging to and used in connection with the activities of such corporation or society.

\*　　\*　　\*　　\*　　\*　　\*

"12. Hospitals and refuge homes, and their furniture and equipment, owned, operated and controlled by any religious or benevolent corporation or society with the necessary grounds used therewith, and

1. Church of the Holy Faith v. State Tax Commission, 39 N.M. 403, 48 P.2d 777; Hanagan v. Rocky Ford Knights of Pythias Bldg. Ass'n, 101 Colo. 545, 75 P.2d 780; Wilson's Modern Business College v. King County, 4 Wash.2d 636, 104 P.2d 580; Gibson v. Phillips University, 195 Okl. 456, 158 P.2d 901; Board of Equalization v. Tulsa Pythian, etc., 195 Okl. 458, 158 P.2d 904; Application of American Legion, 151 Ohio St. 404, 86 N.E.2d 467; Application of New York Conference Ass'n of Seventh Day Adventists, 275 App.Div. 742, 87 N.Y.S.2d 708; State v. Doss, 150 Fla. 491, 8 So.2d 17; Masonic Temple Craft v. Board of Equalization in and for Lincoln County, 129 Neb. 293, 261 N.W. 569; Id., 129 Neb. 827, 263 N.W. 150; Walla Walla Lodge No. 56, I. O. O. F. v. Board of Equalization, 129 Neb. 292, 261 N.W. 571; Dougherty v. City of Philadelphia, 314 Pa. 298, 171 A. 583, at page 585; People v. Y.M.C.A. of Chicago, 365 Ill. 118, 6 N.E.2d 166; Y.W.C.A. v. City of New York, 217 App.Div. 248, 216 N.Y.S. 248.

from which no gain or profit can be derived by reason of their operation.

"13. All property used exclusively by the owner for school or educational purposes, from which no profit is derived, and all property from which no profit or rental is derived and which is held or used exclusively for endowment, building or maintenance purposes of schools or educational institutions." Section 63-105, I.C.

and the Unemployment Compensation exemptions, supra.

The one construction is based only on naked uniformity from similarity of language; the other on language not dissimilar and clothed with two habiliments of reason; first, adherence to strict construction of exemptions from taxation heretofore followed without deviation by this court; second, due regard to the aim and purpose of the statute we are called upon to construe and apply, not ignoring it, and as an imperative consequence not sacrificing the right of the employees to mere expediency and ease of administration. The authorities holding to uniformity with the income tax law frankly say they pay no attention to the Unemployment Compensation Law and see no reason to do so. "This Court has found no particular solace in the argument that statutes concerning employment and social security should require a narrower construction than those concerning income taxes where the language being construed is virtually identical.

There is no satisfying basis for the suggestion." Oklahoma State Fair and Exposition v. Jones, D.C., 44 F.Supp. 630, at page 632.

In other words, the operations, like property of the employer which are exempt, are not taxed; but those operations, like property of the employer which are not exempt, will be taxed. "Approaching the point in issue, it is sufficient to say that by the best reasoned authority in this country when a property is owned by a charitable association or corporation and part of it used for the purposes of the association and the balance used for commercial or profit purposes, if severable that part used for the purpose of the corporation, that is to say for religious, scientific, municipal, educational, literary, or charitable purposes, may be exempt from taxation while that part used for profit may be taxed." Cases. State v. Doss, 150 Fla. 491, 8 So.2d 17, at page 18.

The Income Tax Law has only one purpose—the raising of revenue. The Unemployment Compensation Law raises revenue, but only for and in connection with one purpose—ameliorating the hardships of exculpatory unemployment. The lode star of the first is revenue for the sake of revenue; the lode star of the latter is fruitional coverage. Therefore, in view of the completely dissimilar purposes, it is absolutely inappropriate to use the interpretation of even the identical clause in each as a yard stick one to the other, and

none of the income or unemployment tax cases cited in the majority opinion, or found upon independent investigation, considered the effect of the organization engaging in a commercial activity as bearing on whether the employees in such subsidiary activity should be covered.

One of the premises in Trinidad v. Sagrada Orden De Predicadores, 263 U.S. 578, 44 S.Ct. 204, 206, 68 L.Ed. 458, was: "It is not claimed that there is any selling to the public or in competition with others. The articles are merely bought and supplied for use within the plaintiff's own organization and agencies—some of them for strictly religious use, and the others for uses which are purely incidental to the work which the plaintiff is carrying on." And there was no Unemployment Compensation Law, National or State then in existence or considered. The genesis of that decision that the destination, not the source, of the income as to income tax is not pertinent to the Unemployment Compensation law; Battelle Memorial Institute v. Dunn, 148 Ohio St. 53, 73 N.E.2d 88, supra; Santee Club v. White, 1 Cir., 87 F.2d 5, 8, thus ultimately announced the rule: "* * * An exempt corporation must keep its activities within the scope of the exemption *or it will be taxable on such as are outside it.*" Emphasis ours. Thus, if this case be in point and we apply such rule, the business of the sale and delivery of bakery goods here would be taxed for income.

Cochran v. Commissioner of Internal Revenue, 4 Cir., 78 F.2d 176, 178, held a league organized to scientifically gather information for its institutional members, such as Canadian Temperance Alliance and Anti-Saloon League of America—"* * * to attain, by means of education and legislation, (legislation eliminated in 1933) the total suppression throughout the world of alcoholism, * * *" was, under the income tax law, organized for educational purposes. No vestige of commercial activity, as in the case at bar, was considered, nor was unemployment compensation involved.

Koon Kreek Klub v. Thomas, 5 Cir., 108 F.2d 616, considered leasing land owned by the club to an individual was not engaging in nonexempt activity. The club was essentially a fishing and hunting club. The revenue from the rented land was used to maintain the club and did not constitute operating in a commercial way so as to bar exemption of the payment of revenue tax, relying on the theory in Trinidad v. Sagrada Orden De Predicadores, supra, that the destination, not the source, of the income controls. The club itself did not engage in raising and selling livestock.

International Reform Federation v. Dist. Unemployment Compensation Board, 76 U.S.App.D.C. 282, 131 F.2d 337, 340, considered unemployment compensation not in connection with commercial activity, but— "Unless, then, that portion of appellant's activities in relation to Federal and State legislation on subjects of moral or social

interest unclass it as a charitable organization, the decision below must be reversed." Holding that the activities of the organization as to desired legislation were all within the orbit of its educational field. Herein, the facts clearly show that the delivery and sale of this bread has no connection other than monetary, with the educational and religious scope of appellant.

Commissioner of Internal Revenue v. Orton, 6 Cir., 173 F.2d 483, is an income tax case holding that profit made from the sale of products of a ceramic school did not bar the total income devoted solely to educational purposes, from being exempt, following the theory of Trinidad v. Sagrada Orden De Predicadores, supra. Unemployment compensation was not involved.

In Oklahoma State Fair and Exposition v. Jones, supra, where split activity was noted, it does not appear the tax was sought as herein, only on non-exempt activities. The inaptness of this case is emphasized by construction of it in the analysis in Arnold College for Hygiene & Physical Education v. Danaher, 131 Conn. 503, 41 A.2d 89, holding the appellant there was exempt, but no *commercial* activity was involved.

While general rules may be looked to, definite rulings must take into consideration the special feature of each case. To just lump all outward appearances into one class without regard to inner distinguishing and important features is to lose sight of the necessity of basing a decision upon differentiating facts; La Societe Francaise etc. v. California Employment Comm., 56 Cal.App.2d 534, 133 P.2d 47.

The cases cited in support of liberal extension of exemptions, at the sacrifice of liberal interpretation, are out of harmony with this court's pronouncements in Big Wood Canal Co. v. Unemployment Compensation Division, Batt v. Unemployment Compensation Division, and Meader v. Unemployment Compensation Division, supra.

Practically none of the Federal decisions has considered the feature here involved; namely, conduct of a subsidiary or subordinate business as it may be; that is, selling and delivering bread as a commercial activity in competition with any other bakery. The majority say: "The sale of its surplus bakery products appears to be incidental only to such purposes." This bakery may be small as compared with all the educational and religious activities of the organization, but it is not so insignificant as to lack individual substance as disclosed by the findings of the Board and not challenged, and as set forth in the majority opinion and may not be disregarded. Chesed Shel Emeth Society v. Unemployment Compensation Comm., 356 Mo. 726, 203 S.W.2d 454.

The income tax is levied on income, ad valorem directly on property according to its value, real or personal, and unemployment compensation tax on payroll. Real estate of an eleemosynary institution to be thereby exempt must be used exclusively for that purpose. Operations, while to a certain extent are intangible, they arise out

of the use of tangibles, so if property of an eleemosynary institution is not exempt if used for other than charitable, etc. purposes, so *operations* on a parity of reasoning would not be exempt from an unemployment compensation tax and such distinctions have been recognized. Central Realty Co. v. Martin, 126 W.Va. 915, 30 S.E. 2d 720.

The use of the property determines its status as to ad valorem taxation; Norwegian Lutheran Church of America v. Wooster, 176 Wash. 581, 30 P.2d 381, so the nature of the operation determines as to a business or activity. Readlyn Hospital v. Hoth, 223 Iowa 341, 272 N.W. 90, citing with approval Bistline v. Bassett, supra.

In the case at bar, the Gem State Academy Bakery is operated by a manager appointed by the Conference. Its purposes are partly educational and partly and extensively commercial. It is a distinct economic unit. The wages in question are earned by employees of the commercial department of the bakery. Such employees are not students. The services of such employees are performed for the Academy Bakery, within the meaning of the Employment Security Law; although the Conference owns and is entitled to the income from the Bakery. One-half of the manager's salary is also charged to the commercial side of the Bakery.

The purpose of the Employment Security Law is humanitarian, Section 72-1302, I.C. It seeks the prevention of the economic ills arising out of unemployment and provides unemployment benefits to those unemployed through no fault of their own. Talley v. Unemployment Compensation Division, supra. The purpose of the law should not be thwarted in the name of uniformity by extending the meaning of the phrase "services performed in the employ" of an exempt organization to include services performed for all its sources of income. Contributions should be paid upon the wages of the employees in question and upon one-half the wages of the manager.

The decision of the Industrial Accident Board, as thus modified, should be affirmed.

PORTER, J., concurs in this dissent.

On Rehearing

PER CURIAM.

TAYLOR, J., adheres to the opinion heretofore written by him. HOLDEN, C. J., resigned from the Court and McDOUGALL, District Judge, sat in his place on rehearing.

PORTER and KEETON, JJ., and McDOUGALL, District Judge, now concur in the dissent heretofore written by GIVENS, J.

The Order of the Industrial Accident Board, holding the seven drivers come under covered employment and the manager to the extent of one-half of his wages, therefore, is ordered affirmed. No costs allowed.