## COCHRAN v. COMMISSIONER OF INTERNAL REVENUE

### No. 3827.

Circuit Court of Appeals, Fourth Circuit.

June 3, 1935.

Emory H. Niles, of Baltimore, Md. (Henry W. Schultheis, of Baltimore, Md., on the brief), for petitioner.

John MacC. Hudson, Sp. Asst. to Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., Sewall Key, Sp. Asst. to Atty. Gen., and A. L. Jacobs, of Pittsburgh, Pa., on the brief), for respondent.

Before PARKER and NORTHCOTT, Circuit Judges, and MEEKINS, District Judge.

NORTHCOTT, Circuit Judge.

This is a petition to review a decision of the United States Board of Tax Appeals. The opinion of the Board, handed down in August, 1934, is found in 30 B. T. A. 1115. The appeal involves income taxes for the year 1929 in the amount of $5,621.50.

The petitioner, a resident of Baltimore, Md., contributed $33,200, during the year 1929, to the World League Against Alcoholism and, in making his income tax return for that year, claimed this contribution as a deduction from his gross income. The Commissioner of Internal Revenue refused to allow any portion of the contribution as a deduction on the ground that the World League "is used to spread propaganda against alcoholism and is not an educational institution as set forth in section 23 of the Revenue Act of 1928 [26 USCA § 2023]."

The World League Against Alcoholism, hereinafter referred to as the League, was organized at Washington, D. C., on June 7, 1919, in response to a call issued jointly by the Canadian Temperance Alliance and the Anti-Saloon League of America.

After hearing evidence, the Board made a finding of facts, finding among other things that eleven countries were represented at the conference, and that each representative was the official agent of a national temperance organization; that the formation of the League was the first united effort on the part of the organizations of the various countries toward co-operation; that the various organizations at the meeting at which the League was formed had different ideas about the alcohol problem and the method of dealing with it, but they were all agreed that there should be enlightenment about the problem; and that the idea underlying the formation of the League was that there should be created an agency which would be responsible to the organizations creating it and which would do research work and gather information of all types and kinds about the alcohol problem and would furnish to the member organizations and the public at large all of the information which it was able to obtain.

The Board further found that the constitution of the League contained the following respecting its object and membership:

"Article II.  Object

"The object of this League is to attain, by the means of education and legislation, the total suppression throughout the world of alcoholism, which is the poisoning of body, germ-plasm, mind, conduct and society, produced by the consumption of alocoholic beverages.  This League pledges itself to avoid affiliation with any political party as such, and to maintain an attitude of strict neutrality on all questions of public policy, not directly and immediately concerned with the traffic in alcoholic beverages.

"Article III.  Membership

"The membership of this League is open to organizations which are in harmony with the objects, which are national in the scope of their operation and which, in their international activities, shall work through this League or in cooperation with this League."

The Board also found that in 1932 or 1933 an amendment was made to the constitution of the League by which the word "legislation" was eliminated from article II; that the membership of the League is composed of organizations existing in thirty-three different countries, including practically all of the larger countries; and that the organizations differ very widely in their dealing with the alcohol problem, that most of the organizations existing in the United States are for prohibition, and of the organizations in Great Britain, none advocate prohibition.  One is for local option, and one is definitely opposed to prohibition and local option as well; that the principal organization in France has never favored prohibition nor local option, and its leaders do not feel that wine is to be included in the alcohol problem, as they feel that it is a helpful factor rather than a harmful one in the question of alcoholism; a Japanese organization does not advocate prohibition as it is known in the United States; and the three member organizations in Germany take different positions on the question, one favors prohibition, another opposes, and the third advocates the local option policy.

We quote the following additional findings by the Board:

"The League functions very much as an information bureau.  One of the important features of its work is to collect statistical and historical data on the alcohol problem.  The material collected is distributed among member organizations, the daily press, religious journals, and temperance publications.  The League has published and circulated throughout the world in large quantities and in different languages, periodicals, books, pamphlets, posters, and tracts.  Many of its publications had to do with prohibition and some were in support of it.  The League distributed among its members both proprohibition and antiprohibition literature and also publications by brewers and distillers.  The League also periodically placed vast quantities of printed matter in public libraries and in the libraries of colleges and universities throughout this and other countries.  Most of the literature circulated by the League and practically all of it that goes into any report or that concerns the activity of the League is edited in the offices of the League and not by the member organizations.  The League at various times has

made recommendations and suggestions with respect to courses in alcoholism being offered in colleges and universities. Members of the staff of the League as well as others also are sent out on speech-making trips in behalf of the League. On these trips some of the speakers express themselves as being opposed to the drink evil and advocating prohibition, while others content themselves with giving an impartial statement of the facts.

"The League has a legal department whose work consists of collecting information about legislation, laws, policies, and court decisions from every country in the world relating to the alcohol problem and furnishing that information to the public and to the member organizations.

"The League does not have a very large staff. However, from time to time some members of the staff are 'loaned' to the member organizations and other groups for speech-making purposes under their auspices. This usually occurs at times when such members of the staff would otherwise be idle. When members of the League's staff go out on speech-making trips for other organizations or groups such organizations or groups pay their expenses and pay the League the amount of the regular salary of the members for the time they are away.

"While at least some of the League's member organizations have a legislative program and indulge in political activity, the League as an organization does not have and has never had any legislative program nor has it indulged in political activity nor supported candidates considered by it friendly toward its views. It maintains no legislative agents. Its representatives appear before legislative bodies only when summoned or requested by such bodies.

"The League is not opposed to the return of the open saloon, nor is it opposed to the drinking of all liquors. From the beginning its general activities have been uniformly against alcoholism as defined in the League's constitution and it has stood for the suppression of alcoholism. It, however, does not promote methods by which such result may be attained.

"The League is supported by voluntary contributions, chiefly from individuals. It also receives contributions from its member organizations. No part of the net earnings of the League inures to the benefit of any private shareholder or individual."

After making these findings of fact, the Board, in its opinion, sustains the action of the Commissioner in refusing the deduction on the ground that the League was not, during the year 1929, "an organization organized and operated exclusively for educational purposes."

The only question presented on this review of the action of the Board is whether the League was organized and operated exclusively for educational purposes, and the pertinent Act of Congress is section 23 of the Revenue Act of 1928 (26 USCA § 2023), which provides as follows:

"In computing net income there shall be allowed as deductions: * * *

"(n) Charitable and Other Contributions. In the case of an individual, contributions or gifts made within the taxable year to or for the use of: * * *

"(2) any corporation, or trust, or community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual."

Every finding of fact made by the Board supports the conclusion that the League was exclusively an educational institution, yet the Board reaches a conclusion different from that which is supported by its findings of fact, apparently because the constitution of the League, as originally organized, stated the object of the League to be to attain, by means of "education and legislation," the suppression of alcoholism. The Board found that the League, as an organization, does not have and has never had any legislative program nor indulged in political activities of any character. The Board further found that it maintained no legislative agents and that its representatives appeared before legislative bodies only when summoned by such bodies. In view of this sweeping finding of facts it is difficult to see how the Board could have reached the conclusion that the League was organized for legislative purposes.

It is necessary, in considering the question here involved, to keep well in mind the distinction between organizations working against the use of alcohol as a beverage and the League organized to work against alcoholism, which is the abuse or misuse of

alcohol. Funk & Wagnalls' Standard Dictionary, 20th Century Edition, gives the following definition of alcoholism:

"A morbid condition resulting from the inordinate or excessive use of alcoholic beverages."

Every possible meaning of the word "alcoholism" conveys to the mind a disease, habit, or addiction which should be destroyed if possible. Alcoholism is a thing the elimination of which is as much to be desired as the elimination of addiction to a drug. No matter how strongly one may be opposed to the prohibition of the use of alcoholic beverages, no right thinking person could possibly fail to advocate the elimination of alcoholism—a condition resulting from the abuse of alcohol. That the League organized and operated as it was solely against alcoholism, not alcohol nor its use as a beverage, was engaged in a purely educational purpose seems clear.

The Board further found that the League collected and circulated information and acted very "much as an information bureau" and circulated vast quantities of printed matter in public libraries and libraries of colleges and universities throughout the world and advised colleges and universities with respect to courses on the subject of alcoholism. Nothing could be more educational than this work. The legal department of the League collected information about legislation, laws, policies, and court decisions, furnishing the information thus collected to the public and its member organizations—certainly an educational function.

The Board further found that the League collected and circulated information on both sides of the controversial question of the prohibition of the use of alcohol as a beverage and the Board found that the League as such was not opposed to the return of the open saloon, nor was it opposed to the drinking of all liquors. In view of these findings it is difficult to understand how the Board reached its conclusion that the League was simply the "tool or creature" of its member organizations engaged in and operated for the distribution and dissemination of data which are highly controversial in their nature. The League was against alcoholism. That alcoholism should, if possible, be eliminated is not to be questioned and such a question cannot be considered to be a controversial one.

In Leubuscher v. Commissioner, 54 F. (2d) 998, the Circuit Court of Appeals for the Second Circuit discusses the distinction between an educational institution and one formed for the purpose of propaganda on controversial subjects and holds that a bequest to be used for the purposes of teaching, expounding, and propagating the teachings of Henry George, was deductible. See, also, Weyl v. Commissioner (C. C. A.) 48 F.(2d) 811; Slee v. Commissioner (C. C. A.) 42 F.(2d) 184, 72 A. L. R. 400; Trinidad v. Sagrada Orden De Predicadores, 263 U. S. 578, 44 S. Ct. 204, 68 L. Ed. 458.

It is contended on behalf of the respondent that because certain member organizations of the League, especially those in the United States, advocate prohibition, that the League itself must necessarily be engaged in a controversial undertaking, yet the Board found that certain other member organizations of the League in other countries were opposed to prohibition and that the League simply gathered and disseminated information on both sides of that question. It certainly could not be successfully contended that because one or more members of the faculty of a University advocated policies admittedly controversial, such as the advocacy of socialism or even communism, the University itself was not an educational institution. If a public library has on its shelf books of a highly controversial character, it is none the less educational if it is not operated and maintained for the purpose of giving only one side of a question. The true test is not what the member organizations did with the information supplied by the League, but in what spirit the information is gathered and supplied. A church loses none of its character as a religious organization because of the fact that some of its members are violent partisans on controversial questions.

█ That the laws governing the question here involved should be liberally construed in favor of the taxpayer is well settled. As was said by Mr. Justice Roberts in the case of Helvering v. Bliss, 293 U. S. 144, 55 S. Ct. 17, 20, 79 L. Ed. 246, 95 A. L. R. 207:

"If the meaning of the act were doubtful, we should still reach the same conclusion. The exemption of income devoted to charity and the reduction of the rate of tax on capital gains were liberalizations of the law in the taxpayer's favor, were be-

gotten from motives of public policy, and are not to be narrowly construed."

Every finding of fact of the Board sustains the allowance of the deduction; no finding of fact of the Board sustains the proposition that the League was not exclusively educational or scientific; the object of the League was without question a meritorious one, and there is no substantial evidence to sustain the conclusion of the Board.

The decision of the Board is accordingly reversed.